Bowers *v.* Pennsylvania Labor Relations Board,
Appellant.

Argued April 18, 1960.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Harry J. Rubin,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for appellants.

*Paul H. Rhoads,* with him *George B. Balmer,* and *Snyder, Balmer & Kershner,* and *Rhoads, Sinon & Reader,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, January 16, 1961:

Clarence P. Bowers, the plaintiff, was appointed by the Governor on June 20, 1955, as a member of the Pennsylvania Labor Relations Board for a term to expire on June 2, 1959. The appointment was made under authority conferred upon the Governor by Section 4(a) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, No. 294, as amended, 43 PS §211.4(a), and was duly confirmed by the State Senate

pursuant to a requirement of the Act. On November 8, 1957, the Governor, in asserted reliance upon Article VI, §4, of the Pennsylvania Constitution for his authority, purported to remove Bowers forthwith from his office and so notified him the same day both by telegram and by letter. The cited constitutional provision declares, inter alia, that "Appointed officers . . . may be removed at the pleasure of the power by which they shall have been appointed." Article XII, §1, of the Pennsylvania Constitution provides that "All officers . . . shall be elected or appointed as may be directed by law."

Bowers instituted this action of mandamus in the Court of Common Pleas of Dauphin County against the members of the Pennsylvania Labor Relations Board, the Secretary of Labor and Industry, the Auditor General and the State Treasurer, seeking to compel the members of the Labor Relations Board and the Secretary of Labor and Industry to recognize him as a member of the Labor Relations Board and to permit him to participate in the deliberations and actions of the Board and to perform the normal and lawful functions of a member of the Board until the expiration of the term specified in the Commission evidencing his appointment. The plaintiff also sought judgment in his favor requiring the Secretary of Labor and Industry to continue to certify to the Auditor General and the State Treasurer the amount of salary due him as a member of the Labor Relations Board and requiring the Auditor General to cause warrants to be drawn for the payment of such salary and the State Treasurer to pay the salary so warranted.

The defendant officials, represented by the Attorney General of the Commonwealth, filed preliminary objections to the complaint on the ground that it failed to state a cause of action for the assigned reason, inter alia, that the Governor had acted in strict compliance

with the authority vested in him by Article IV, §2, and Article VI, §4, of the Pennsylvania Constitution, whereby it was the Governor's absolute right to remove, at his pleasure, the plaintiff as a member of the Pennsylvania Labor Relations Board.

The court below filed an opinion holding that the Governor could not dismiss the plaintiff as a member of the Pennsylvania Labor Relations Board without cause and, accordingly, entered an order dismissing the preliminary objections and giving the defendants thirty days in which to answer the complaint, thus leaving for further litigation the question whether or not the plaintiff had been dismissed for cause.

The defendants then filed a responsive answer to the complaint, averring new matter to which the plaintiff filed a reply. By agreement of counsel the case was tried to the court without a jury.

The trial judge concluded that the defendants had failed to prove that the plaintiff was removed for cause and, thereupon, entered an order giving judgment for the plaintiff against the defendants and directing that the plaintiff be paid the emoluments of the office due him. To this order, the defendants filed exceptions which, pursuant to stipulation of counsel, were subsequently dismissed without argument and judgment was then entered in favor of Clarence P. Bowers, the plaintiff, and against the defendants, from which judgment the defendant officials have now appealed.

All public officers are, of course, removable *for cause*. In *McSorley v. Pennsylvania Turnpike Commission*, 390 Pa. 81, 86, 134 A. 2d 201 (1957), we so recognized in pointing out that: "The initial enjoinder of Article VI, Section 4, is that 'All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous

crime.' The latter clause has been held to be self-executing: Commonwealth v. Davis, 299 Pa. 276, 279, 149 A. 176. It logically follows that if officers do not behave themselves well while in office, they are removable for cause. If their blamable conduct proves sufficient to convict them of misbehavior in office or any infamous crime, they are automatically removed by virtue of the self-executing provision of Article VI, Section 4, hereinabove quoted, but, until then, they are removable for cause in like connection at the pleasure of the appointor."

However, in the instant case, the defendants have acquiesced in the conclusion of the court below that they failed to prove *cause* as the motivating impetus of the Governor's attempted removal of the plaintiff. The sole question of law, therefore, on this appeal, is, as stated in appellants' brief: "May the Governor of Pennsylvania, at his pleasure, remove a member of the Pennsylvania Labor Relations Board from office?" To that question we shall now address ourselves.

In *Watson v. Pennsylvania Turnpike Commission*, 386 Pa. 117, 123, 125 A. 2d 354 (1956), we declared it to be ". . . established in this State beyond respectable controversy that, where the legislature creates a public office, it may impose such terms and limitations with reference to the tenure or removal of an incumbent as it sees fit. There is nothing in the Constitution prohibiting such action while, on the other hand, Article XII, Section 1, expressly admits of it." See, in accord: *Marshall Impeachment Case*, 360 Pa. 304, 310-11, 62 A. 2d 30 (1948); *Suermann v. Hadley*, 327 Pa. 190, 200, 193 Atl. 645 (1937); *Weiss v. Ziegler*, 327 Pa. 100, 104, 193 Atl. 642 (1937); *Milford Township Supervisors' Removal*, 291 Pa. 46, 49-51, 139 Atl. 623 (1927); *Commonwealth ex rel. Vesneski v. Reid*, 265 Pa. 328, 333, 108 Atl. 829 (1919); *Bowman's Case*, 225 Pa. 364, 368, 74 Atl. 203 (1909). Confirmation of this

constitutionally unassailable principle does not reside alone in judicial pronouncement. The legislature itself has exercised its power so to enact.

For example, by Section 201 of the Milk Control Law of April 28, 1937, P. L. 417, 31 PS §700j-201, the legislature, after creating "an independent administrative commission to be known as the Milk Control Commission", composed of three members to be appointed by the Governor and confirmed by the State Senate, for staggered terms of six years each, specifically prescribed that "The Governor may remove any commissioner for inefficiency, neglect of duty or misconduct in office: Provided, That he is given a copy of the charges against him and an opportunity to be publicly heard in person or by counsel in his own defense upon not less than ten days' notice, and that the Governor file with the Department of State a complete statement of all charges made against such commissioner, together with a complete record of the proceedings and his findings thereon."

It is too plain for argument that, by this provision of the Milk Control Law, the legislature deliberately and effectively banished any thought of power in the Governor to remove, *at his pleasure*, a member of the Milk Control Commission. Obviously, if the Governor could also remove such a commissioner *at his pleasure* by virtue of Article VI, §4, of the Constitution, he would not need trouble himself to make charges of inefficiency, neglect of duty or misconduct in office against an incumbent commissioner, whom he desired to remove, and follow the detailed procedure meticulously spelled out by §201 of the Milk Control Law. See, also, Section 4 of the Act of March 31, 1937, P. L. 160, 66 PS §455, which enumerates the specific causes for which the Governor may remove a member of the Pennsylvania Public Utility Commission and provides for the filing of charges, notice, and a public hearing

at which the incumbent commissioner has an opportunity to be heard in person or by counsel.

It is manifest, therefore, that whether the legislature in creating an appointive office has evidenced by its enactment an intention that the tenure of the appointee shall not be subject to termination at the pleasure of the appointing power presents a pure question of statutory construction which is peculiarly and exclusively the function of the judiciary to resolve. Such is the problem with which we dealt in the *Watson* case, supra, and such is, likewise, the scope of our present responsibility.

The Pennsylvania Labor Relations Act,[1] which created the office to which Bowers was appointed by the Governor, provides, in Section 4(a) as follows: "There is hereby created . . . the 'Pennsylvania Labor Relations Board' . . . which shall be composed of three members who shall be appointed by the Governor, but with the advice and consent of two-thirds of all the members of the Senate. . . . *One of the original members shall be appointed for a term of two years, one for a term of four years, and one for a term of six years, but their successors shall be appointed for terms of six years each, except that any individual chosen to fill a vacancy shall be appointed only for the unexpired term of the member whom he is to succeed . . .*" (Emphasis supplied).

The appellants would have us treat the emphasized portion of the foregoing statutory provision as a complete nullity and of no significance whatsoever. According to their contention, the specified provision might just as well have not been included in the carefully worded Act, notwithstanding that we are admonished by long established and firmly entrenched

---

[1] Act of June 1, 1937, P. L. 1168, No. 294, as amended, 43 PS §211.1 et seq.

rules of statutory construction that "Every law shall be construed, if possible, to give effect to all its provisions" and that the legislature, in the enactment of a law, is to be presumed to have intended the entire statute to be effective and certain: §§51 and 52(2) of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §§551 and 552(2). None the less, the appellants argue, in effect, that Bowers' fixed term of office which, according to the express stipulation of the gubernatorial commission evidencing his appointment, was to expire June 2, 1959, was a mere fiction; that, in reality, what Bowers was appointed to, despite his commission's specification, was merely an indefinite term which would last no longer than it pleased the Governor that the appointee should continue in office. In short, the appellants interpret the statutory provision that members of the Pennsylvania Labor Relations Board shall be appointed for fixed terms to mean that such members shall be appointed for only so long, not exceeding six years, as shall please the Governor, and they construe the provision for staggered expiration dates for the terms of the members of the Board as being of no effect whatsoever and, consequently, meaningless.

*Watson v. Pennsylvania Turnpike Commission,* supra, was concerned with the attempted removal by the Governor, *without cause,* of a member of the Pennsylvania Turnpike Commission. We there had occasion to interpret the statutory provision contained in Section 4 of the Act of May 21, 1937, P. L. 774, No. 211, 36 PS §652d, which provided that members of the Turnpike Commission should be appointed to ten-year terms, the expiration dates of which were fixed at staggered intervals. We interpreted the legislative intent evidenced by this arrangement as follows: "The purpose of the foregoing provision as to the terms of office of the Commissioners (i.e., those first to be appointed and

thereafter their successors) is patent. It was designed so that, by the prescribed rotation, the terms of three of the four appointed members of the Commission would always be current. The Act expressly provides that three members of the Commission shall constitute a quorum who, for all purposes, shall act unanimously. Were the Commissioners to be held removable at the pleasure of the Governor, the carefully expressed scheme of term rotation would be effectually nullified. If it be countered that the Governor, in appointing to a vacancy created by his dismissal of a Commissioner, would respect the spirit of the Act and appoint a successor for the balance of the unexpired term of the dismissed Commissioner, the answer is that the power so attributed to the Governor would still violate the plain intendment of the Act. He could render all of the offices vacant at one time which, obviously, the Act was specifically designed to make impossible. To urge that such a situation would never be provoked is irrelevant to the question of the power of the Governor in the premises as affected by the Act creating the office and prescribing the tenure therefor. It follows that the attempted removal of the plaintiff from his office was without warrant of law and that he must, therefore, be restored to the position."

The legislature by providing in the Pennsylvania Labor Relations Act staggered expiration dates for fixed terms of Board members of a duration which, if fulfilled, would extend beyond the incumbency of the appointing Governor, thereby evidenced a desire and intent (just as in the case of the Act creating the Pennsylvania Turnpike Commission) that this important Board should at all times be in position to benefit from the counsel of experienced members who have acquired over the years of their tenure a knowledge and understanding of the Board's work so essential to a thoughtful and prudent solution of the many complex prob-

lems encountered. This is especially true with respect to the administration of the Pennsylvania Labor Relations Act, involving, as it does, technical and delicate questions of labor-management relations. It is plain enough that, in the public interest, such Board members were not to be made amenable to political influence or discipline in the discharge of their official duties. Since we may not properly assume that the legislature intended to enact a meaningless and ineffectual (although carefully worded and clearly expressed) statutory provision, §4(a) of the Pennsylvania Labor Relations Act must rightly be held to intend that duly confirmed members of the Pennsylvania Labor Relations Board possess tenure for the fixed terms for which they are appointed and may not be removed by the Governor except *for cause.*

The legislature has shown that, when it creates an administrative agency and provides that its members shall be appointed for fixed terms with staggered expiration dates, the intent thereby evidenced is that such members are not removable by the appointor at his pleasure. For instance, where, in a statute so phrased, the legislature has desired that the appointor may remove appointees at his pleasure, it has incorporated an express provision to that effect. Thus it is that, when Section 8(a) of the Parking Authority Law of June 5, 1947, P. L. 458, as amended, 53 PS §348(a), was enacted providing that the powers of a municipal parking authority shall be exercised by a Board composed of five members, that each of such members shall be appointed for a term of five years, and that such terms shall expire at staggered intervals, the legislature expressly included a provision that "Members of the board may be removed at the will of the appointing power." If the fixed five year terms with staggered expiration dates, provided by the Parking Authority Law, did not imply, as a matter of statutory construc-

tion, that the tenure of appointed members should endure for their fixed terms, without being subject to removal at the pleasure of the appointing power, then why did the legislature expressly add that members of the Board may be removed at the will of the appointing power? The appellants' contention would make this provision a useless and meaningless exertion on the part of the legislature.

The instant case is not to be distinguished, in principle, from *Watson v. Pennsylvania Turnpike Commission,* supra, upon which the court below properly relied in entering judgment for the plaintiff and against the defendants.

The foregoing is the decisional basis upon which the judgment for the plaintiff entered by the court below will be affirmed.

---

The writer is of the further opinion, which he feels duty-bound to express, that there is an additional compelling reason why the Governor may not remove, at his pleasure, a member of the Pennsylvania Labor Relations Board.

It is implicit in the American form of government, as ordained by the Constitution of both the United States and Pennsylvania, that the government consist of three co-ordinate branches, legislative, executive and judicial, and that one branch should not impinge on the province of another. Any interference by a member of the executive department of government with the tenure of an incumbent member of a quasi-judicial board or commission would plainly offend against this basic constitutional concept. The Supreme Court has twice declared that the President of the United States lacks power to remove *without cause* an appointed member of an administrative agency which possesses and exercises judicial powers: *Wiener v. United States,*

357 U. S. 349, 352 (1958); *Humphrey's Executor v. United States,* 295 U. S. 602, 627-628 (1935). For the same reasons, the Governor of Pennsylvania may not remove *without cause* an appointee to an administrative board or commission which, as authorized by law, is invested with judicial powers and duties. Nor is it of presently material significance that the Constitution of the United States, under which the cases above cited arose, does not contain a provision such as Article VI, Section 4, of the Pennsylvania Constitution. The controlling governmental principle of a division of powers among equal and independent legislative, executive and judicial departments, with the attendant salutary checks and balances, inheres in, and is the essence of, both our Federal and State Constitutions.

In *Humphrey's Executor v. United States,* supra, the plaintiff's decedent had been appointed to the Federal Trade Commission by President Hoover, pursuant to Section 1 of the Federal Trade Commission Act of September 26, 1914, 38 Stat. 717, as amended, 15 U.S.C.A. §41, which provides for the appointment of five members of the Commission for fixed seven-year terms with staggered expiration dates. President Roosevelt removed Humphrey from the Commission on the ground that "the aims and purposes of the administration with respect to the work of the Commission can be carried out most effectively with personnel of my own selection." The Supreme Court was unmoved by the argument that a power vested in the President to remove an appointee at his pleasure would be conducive to more responsible and more efficient government. On the contrary, the court found merit in the opposite view. After noting that the Federal Trade Commission is, in part, a quasi-legislative and quasi-judicial body, the Supreme Court declared (pp. 629-630) that "The authority of Congress, in creating quasi-legislative or quasi-judicial agencies, to require

554

them to act in discharge of their duties independently of executive control cannot well be doubted; and that authority includes, as an appropriate incident, power to fix the period during which they shall continue in office, and to forbid their removal except for cause in the meantime. For it is quite evident that one who holds his office only during the pleasure of another, cannot be depended upon to maintain an attitude of independence against the latter's will.

"The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is hardly open to serious question. So much is implied in the very fact of the separation of the powers of these departments by the Constitution; and in the rule which recognizes their essential co-equality. The sound application of a principle that makes one master in his own house precludes him from imposing his control in the house of another who is master there. James Wilson, one of the framers of the Constitution and a former justice of this court, said that the independence of each department required that its proceedings 'should be free from the remotest influence, direct or indirect, of either of the other two powers.' Andrews, The Works of James Wilson (1896), vol. 1, p. 367. And Mr. Justice STORY in the first volume of his work on the Constitution, 4th ed., §530, citing No. 48 of the Federalist, said that neither of the departments in reference to each other 'ought to possess, directly or indirectly, an overruling influence in the administration of their respective powers.' And see O'Donoghue v. United States, supra [289 U. S. 516], at pp. 530-531.

"The power of removal here claimed for the President falls within this principle, since its coercive influence threatens the independence of a commission, which is not only wholly disconnected from the executive de-

partment, but which, as already fully appears, was created by Congress as a means of carrying into operation legislative and judicial powers, and as an agency of the legislative and judicial departments."

That the Pennsylvania Labor Relations Board possesses judicial powers and performs duties of such nature is too plain for question. See §§7, 8 and 9 of the Pennsylvania Labor Relations Act, as amended, 43 PS §§211.7, 211.8 and 211.9. Specifically, §8(c) provides that at a hearing on a charge of unfair labor practice, —"If, upon all the testimony taken, the board shall determine that any person named in the complaint has engaged in or is engaging in any such unfair labor practice the board shall state its findings of fact, and issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such reasonable affirmative action, including reinstatement of employes discharged in violation of clause (c) of subsection (1) of section six of this act, with or without back pay, as will effectuate the policies of this act. Such order may further require such person to make reasonable reports, from time to time, showing the extent to which the order has been complied with. If, upon all the testimony, the board shall be of the opinion that the person or persons named in the complaint has not engaged in or is not engaging in any such unfair labor practice, then the board shall make its findings of fact and shall issue an order dismissing the complaint." And, on appeal from a decision of the Board to *any* common pleas court (County Court in Allegheny County), §9(a) of the Pennsylvania Labor Relations Act, 43 PS §211.9(a), provides that "The *findings* of the board as to the facts, if supported by evidence, shall be conclusive." (Emphasis supplied). Such conclusiveness has the adjudicatory quality of a finding by a court of first instance.

The excessive effect which the appellants ascribe to Article VI, §4, of the State Constitution, if adopted, would thwart a permissible exercise of legislative will and preclude a quasi-judicial board from employing that degree of fairness, impartiality and objectivity which should and, in good conscience, must attend the exercise of judicial power. "For," as the Supreme Court observed in the *Humphrey* case (p. 629), "it is quite evident that one who holds his office only during the pleasure of another, cannot be depended upon to maintain an attitude of independence against the latter's will." It is implicit as well as inherent in any just system of law that a party complaining of, or charged with, the commission of wrongs legally redressable, be entitled, at the very least, to a determination by a tribunal independent of the influence of powerful personages, political or otherwise.

In *Wiener v. United States,* supra, the plaintiff had been appointed to membership on the War Claims Commission by President Truman pursuant to authority granted by Section 2(a) of the War Claims Act of 1948, as amended, 62 Stat. 1240, 50 App. U.S.C.A., §2001(a). Wiener was subsequently removed, without cause, by President Eisenhower for the assigned reason, —"I regard it as in the national interest to complete the administration of the War Claims Act of 1948, as amended, with personnel of my own selection." The Supreme Court, noting that the Commission was a quasi-judicial body, held that the President was without any such power of removal, saying (at page 356), "If, as one must take for granted, the War Claims Act precluded the President from influencing the Commission in passing on a particular claim, a fortiori must it be inferred that Congress did not wish to have hang over the Commission the Damocles' sword of removal by the President for no reason other than that he preferred to have on that Commission men of his own choosing."

The fundamental constitutional principle thus recognized and applied by the Supreme Court in the *Humphrey* and *Wiener* cases, supra, was actually written into Article VI, §4, of our State Constitution wherein "judges of the courts of record" are expressly excluded from the appointor's power to remove at his pleasure. While this inhibition does not mention, eo nomine, members of quasi-judicial boards or commissions as being within the exclusion, the restraint as to them is inherent, none the less, in the very fabric of our Constitution. The reason why quasi-judicial boards or commissions were not specifically named in the exclusory clause of Article VI, §4, expressly applicable to "judges of the courts of record," is patent. Such agencies were entirely unknown to this State's political customs and usages at the time of the drafting and adoption of the Constitution of 1874. The determinant, so far as the constitutional inhibition on the appointor's power of removal at his pleasure is concerned, depends upon *the character of the powers* exercisable by the appointee.

The constitutional debates, to which the appellants' brief makes extensive reference, while interesting as always, are not persuasive as to the meaning of Article VI, §4. It is highly questionable, moreover, whether such debates are even relevant upon a judicial inquiry as to the meaning of a particular constitutional provision. We have held a number of times that the debates on the floor of the legislature on a pending bill are not relevant in ascertaining the legislative meaning of the eventuating statute. See *Martin Estate,* 365 Pa. 280, 283, 74 A. 2d 120; *National Transit Company v. Boardman,* 328 Pa. 450, 454, 197 Atl. 239; *Tarlo's Estate,* 315 Pa. 321, 324-25, 172 Atl. 139. In *Duplex Printing Press Company v. Deering,* 254 U. S. 443, 474, the Supreme Court of the United States said, "By repeated decisions of this court it has come to be well estab-

lished that the debates in Congress expressive of the views and motives of individual members are not a safe guide, and hence may not be resorted to, in ascertaining the meaning and purpose of the law-making body . . . ." Likewise, here, no reason or justification is apparent for resorting to the individual expressions of opinion of members of the constitutional convention in searching for the meaning of a provision of the adopted Constitution.

Inasmuch as the Pennsylvania Labor Relations Board performs *judicial* functions, inter alia, the Governor should be held to be without constitutional power to remove a member of the Board at his pleasure.

---

Briefly stated, the ratio decidendi of our affirmance in this case of the judgment for the plaintiff entered by the court below is that the plain language of §4(a) of the Pennsylvania Labor Relations Act requires the same judicial construction that we placed upon similar language in the Act creating the Pennsylvania Turnpike Commission. See *Watson v. Pennsylvania Turnpike Commission,* supra.

Judgment affirmed.

---

Dissenting Opinion by Mr. Justice Musmanno:

I join in the able, in fact, magnificent, Dissenting Opinion written by my brother Benjamin R. Jones in this case. The purpose of this separate dissent is merely to say that while Justice Jones disagrees with the *Watson* case,* "reluctantly," I oppose it whole-heartedly. I would overrule it instanter. When it was promulgated, I filed a Dissenting Opinion against it to

---

* 386 Pa. 117.

the extent of twelve closely printed pages. By reference, I repeat and emphasize everything I said in that Dissent.

———

DISSENTING OPINION BY MR. JUSTICE BENJAMIN R. JONES:

I dissent from the conclusion reached by a majority of this Court that the Governor of the Commonwealth lacked the power to remove Clarence P. Bowers as a member of the Pennsylvania Labor Relations Board. The basis of my dissent is that the statute which created the Pennsylvania Labor Relations Board does not reveal any legislative intent that a member of the Pennsylvania Labor Relations Board shall not be subject to removal at the pleasure of the Governor.

This appeal presents a narrow, but highly important,[1] question: whether the Governor of the Commonwealth has the power, *at his pleasure,* to remove from office a member of the Pennsylvania Labor Relations Board?

On June 20, 1955, Clarence P. Bowers was appointed by the then Governor, George M. Leader, to membership on the Pennsylvania Labor Relations Board "with the advice and consent of two-thirds of all the

———

[1] Approximately thirty statutory boards and commissions— such as trustees of State Hospitals, trustees of State Teachers' Colleges, Civil Service Commission, Fair Employment Practice Commission, Housing Authorities, Labor Relations Board, Liquor Control Board, Milk Control Commissions, etc.—appointed by the Governor for staggered terms will be directly affected by this decision. Approximately fifty statutory boards and commissions— such as, Athletic Commission, Delaware River Port Authority, State Council of Education, Flood Control Commission, Sanitary Water Board, Securities Commission, Water and Power Resources Board, Workmens' Compensation Board, etc.—appointed by the Governor for fixed terms may be affected by this decision.

members of the Senate".[2]   The term to which Bowers was appointed did not expire until June 2, 1959.   On November 8, 1957, Governor Leader notified Bowers that he was removed forthwith from his office.

Bowers then instituted a mandamus action in the Court of Common Pleas of Dauphin County against the Pennsylvania Labor Relations Board (herein called Board), the two remaining members of said Board, the Secretary of Labor and Industry, the Auditor General and the State Treasurer to compel them to recognize him as a member of said Board and to pay him the salary attached to that office.   Preliminary objections filed on defendants' behalf were dismissed.   An answer, inclusive of new matter, and a reply thereto having been filed, the parties were heard, by agreement, before the court without a jury; after hearing, the court below entered judgment in favor of Bowers and against the defendants.   From the entry of that judgment this appeal was taken.

Bowers' status as a "public officer" is beyond question (*Smiley v. Heyburn*, 389 Pa. 594, 133 A. 2d 806) and the power of the Governor, at will, to remove Bowers from his office must arise, if at all, from the second sentence of Article VI, §4 of the Pennsylvania Constitution which Article reads as follows: "All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. *Appointed officers,* other than judges of the courts of record and the Superintendent of Pub-

---

[2] This appointment was made in accordance with the provisions of §4(a) of the Pennsylvania Labor Relations Act of June 1, 1937, P. L. 1168, as amended, 43 PS §211.4, a statute which further provides: "One of the original members shall be appointed for a term of two years, one for a term of four years, and one for a term of six years, but their successors shall be appointed for terms of six years each . . . ."

lic Instruction, *may be removed at the pleasure of the power by which they shall have been appointed.* All officers elected by the people, except Governor, Lieutenant Governor, members of the General Assembly and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate". (Emphasis supplied).

Resolution of the present issue depends upon an interpretation of the language of this Article of the Constitution.[3] *All* public officers are subject to removal for misconduct. *Appointed* officers, except judges of courts of record and the Superintendent of Public Instruction, are removable *generally* at the pleasure of the power which appointed them. *Elected* public officers are subject to removal by the Governor for cause upon the address of two-thirds of the Senate.

I am convinced that it was the intent of the Convention of 1873 which framed Article VI, §4, that *all* appointed public officers with the two named exceptions, were to be subject to removal at the pleasure of the appointing power. This conviction arises from an examination and study of the debates in and the action of the Convention of 1873 :[4] 3 Debates, pp. 224-226; 5 De-

---

[3] Employees, as distinguished from *public officers*, are not within this constitutional provision. Employees, such as teachers, firemen, policemen, etc., *may*, by legislative action, be subject to removal only after a prescribed method of procedure such as notice of charges, hearing, etc. See: *Teachers' Tenure Act Cases*, 329 Pa. 213, 230, 231, 197 A. 344.

[4] Although as a general rule, legislative debates cannot be judicially employed to resolve doubt or ambiguity in the language of a constitution or statute (*Tarlo's Estate*, 315 Pa. 321, 324, 325, 172 A. 139; *Commonwealth ex rel. Margiotti v. Lawrence et al.*, 326 Pa. 526, 532, 193 A. 46; *Busser v. Snyder*, 282 Pa. 440, 450, 451, 128 A. 80; *Duplex Printing Press Co. v. Deering*, 254 U. S. 443, 41 S. Ct. 172), yet, when the meaning of the constitutional or statutory language is clear and unambiguous, legislative debates may be

bates, pp. 373, 374, 375; 7 Debates, pp. 559-562, 782; 8 Debates, pp. 122-126; Buckalew, An Examination of the Constitution of Pennsylvania, pp. 184-186.[5] The Convention's approval of the second sentence of Article VI, §4, with its obvious understanding of all its implications, clearly indicates that the Convention intended that the appointing power have the right *generally* to remove *all* appointed officers at its pleasure.[6]

The construction and interpretation of the provisions of Article VI, §4 have been before this Court on numerous occasions. Unfortunately, some of our decisions appear to have resulted in some confusion and uncertainty, particularly in two areas: (1) the right of the legislature, if any, in the creation of non-constitutional or legislative offices, to restrict or limit the "appointing power" (which appoints the incumbents of

---

utilized for the purpose of confirmation of the meaning of the constitutional or statutory language. No reason in law or in logic appears why such debates should not be so utilized. In *U. S. et al. v. Missouri Pacific Railroad Co.*, 278 U. S. 269, 49 S. Ct. 133, 136, the Court states: "But the reasons for and the significant circumstances leading up to the enactment may be noticed in confirmation of the meaning conveyed by the words used. [citing cases]."

[5] Charles R. Buckalew, one-time U. S. Senator from Pennsylvania, was not only a most distinguished and influential Convention delegate, but he led, unsuccessfully, the fight against the inclusion in the Constitution of this power of removal of appointed public officers.

[6] The phrase "appointing power" has been before our Court for interpretation. In *Lane v. Commonwealth, etc.*, 103 Pa. 481, in considering the right of a Governor to remove a public officer pursuant to a statute which provided for appointment by the Governor "with the advice and consent of the Senate, we held that it was the Governor, not the Senate," which was the "appointing power". In *Commonwealth ex rel. Attorney General v. Benn*, 284 Pa. 421, 131 A. 253, we held that the statute which created the Public Service Commission had placed the "appointing power" in the Legislature and not in the Governor and that the Governor had no right to remove at his pleasure a member of that Commission.

such offices) in the removal of the incumbents of such offices without offending Article VI, §4; (2) assuming, arguendo, that the legislature has such right, the manner in which such legislative intent be shown. A reference to our prior decisions will illustrate the present state of the law in this field.

*Houseman v. Commonwealth,* 100 Pa. 222—the first case which arose under Article VI, §4—held that the term "officers" in Article VI, §4 included municipal, as well as state, officers and that an appointed municipal officer (a collector of delinquent taxes in Philadelphia and a nonconstitutional officer) was removable at the will and pleasure of the appointing power. *Lane v. Commonwealth,* 103 Pa. 481, upheld the right of the Governor to remove at his pleasure the recorder of Philadelphia (a nonconstitutional officer) who had been appointed by a previous Governor for a *statutorily fixed term* of ten years.

*Bowman's Case,* 225 Pa. 364, 74 A. 203, involved the removal of an *elected* constitutional officer—a justice of the peace—by a statutorily authorized method and the sole question therein was whether such statutory provision was in conflict with the *third sentence* of Article VI, §4 dealing with *elected* officers. In holding invalid this statutory method of removal, the Court, venturing beyond the immediate issue, stated: ". . . for, though others filling purely legislative offices may be without the constitutional provision as to removal, he [a justice of the peace] is clearly within it." (p. 368). This judicial insinuation that the constitutional provision was inapplicable to the removal of certain legislative officers, i.e., officers in legislatively created offices, although dicta, has been construed as a determination or a ruling that, despite the provisions of Article VI, §4, the legislature has the right to create nonconstitutional offices the incumbents of which are sub-

ject to removal *only* in the legislatively mandated manner.

In *Seltzer v. Fertig*, 237 Pa. 514, 85 A. 869, the power of a register of wills to remove an assistant clerk of the Orphans' Court (a constitutional officer) at his pleasure was upheld and in *Commonwealth ex rel. Lowell v. Hoyt*, 254 Pa. 45, 98 A. 782 (a per curiam opinion), the power of county commissioners to remove at pleasure an inspector of weights and measures (a nonconstitutional officer) was upheld and the following language in the lower court's opinion approved (p. 53) : *"It is entirely settled that when the Constitution has declared the grounds or the mode of removal the legislature has no power to authorize removal for any other reason or in any other mode; it cannot provide additional causes, restrict or lessen the causes, or alter the method"*. (Emphasis supplied). *Hoyt* is consonant with both the expressed intent of the framers of Article VI, §4 and the language thereof.

In *Commonwealth ex rel. Vesneski v. Reid et al.*, 265 Pa. 328, 108 A. 829, a borough council had attempted to remove an *elected* burgess (a nonconstitutional officer) and we held that he could be removed only by the methods provided under Article VI, §4, relying on *Commonwealth v. Weir*, 165 Pa. 284, 30 A. 835.[7] However, the Court then stated that a non-constitutional officer could be removed "by the legislature or under its authority in the manner provided by Constitution or statute . . . . (p. 333)" It will be noted that *Vesneski* draws a distinction between the removal of appointed constitutional and appointed non-constitutional public officers. In *Commonwealth ex rel. v. Likeley*, 267 Pa. 310, 110 A. 167, we held that a city clerk (a non-constitutional officer) appointed by a city council

---

[7] *Weir* properly held that an office created by the legislature could be abolished by the legislature.

for a fixed four year term was removable by council at its pleasure.

In *Georges Township School Directors*, 286 Pa. 129, 133 A. 223, certain taxpayers, proceeding under the provisions of the School Code of 1911, sought the removal of school directors (*elected* officers) in the court of common pleas. The sole issue was the constitutionality of the statute under which these proceedings were instituted. The school directors argued that they were subject to removal only if convicted of some misbehavior or crime and in the manner prescribed by Article VI, §4, and that the statutory provision providing another method of removal was invalid. The actual ruling in *Georges* was that the statutory provision in the School Code of 1911 was simply an amendment of a statute which antedated the Constitution of 1874 and was not in conflict therewith. The Court stated: "The constitutional method of removal must be resorted to, where applicable, for it is 'exclusive and prohibitory of any other mode which the Legislature may deem better or more convenient': Com. v. Benn, 284 Pa. 421, 428". (p. 133), and, referring to appointive officers, the Court recognized that the appointing power had the right to remove at its pleasure those officers—state, county and municipal—which it had appointed. After distinguishing between constitutional officers (those which the Constitution expressly provides shall be chosen) and legislative or non-constitutional officers (those provided by acts of assembly, passed either before or after the Constitution), the Court then indicated there was a difference between such officers in the following respect: "But where no provision has been made by the legislature for the manner of removal of such an officer [that is, a non-constitutional officer] . . . then he must be deposed, if at all, in the way provided by the fundamental law. If, however, the position has been specifically provided for by the Con-

stitution itself, article VI, section 4, must control, if an attempt to dismiss from service is undertaken . . ." (p. 134). *Vesneski's* distinction in the manner of removal from office between the two classes of officers is thus reaffirmed in *Georges.*

*Muir v. Madden,* 286 Pa. 233, 133 A. 226—decided nine days after *Georges*—involved the right of a board of school directors to remove the school board treasurer at their pleasure. Madden was named treasurer (an appointed and non-constitutional officer) for a term of one year under the provisions of the School Code of 1911. Within the year he was removed from his office without cause. The School Code provided for the removal of "officers, employees and appointees" only after due notice and after hearing, if demanded, and then only for certain specified causes. This Court held that Madden, despite the removal provision in the statute, was removable under Article VI, §4 by the appointing power, i.e., the school board, at its pleasure. The Court stated: ". . . so it cannot be doubted that article VI, section 4, of the Constitution, making such officers removable only at the pleasure of the appointing power, applies to [appointed officers] . . .", relying on *Commonwealth v. Sulzner,* 198 Pa. 502, 48 A. 476.

In *Milford Township Supervisors' Removal,* 291 Pa. 46, 139 A. 623, certain taxpayers petitioned the quarter sessions court of Somerset County, under the General Township Act of 1917, to declare vacant the offices of township supervisors (elected non-constitutional officers) because of certain alleged derelictions of duty on the part of the supervisors. The lower court held that the removal provision of the Township Act was invalid because it conflicted with the provisions of Article VI, §4. On appeal, this Court reversed the court below on the ground that the removal provision in the Township Act was simply an implementation of the constitutional authority of removal for misconduct un-

der the *first* sentence of Article VI, §4. However, the Court—*for the first time*—stated that the provisions of Article XII, §1 acted as a limitation on the provisions of Article VI, §4. The pertinent portion of Article XII, §1 provides: "All officers, whose selection is not provided for in this Constitution, shall be elected or appointed as may be directed by law:"[8] The Court in this connection said "A necessary implication from this provision—and indeed, also, from the legislature's supreme power to legislate on all subjects not constitutionally inhibited [citing cases],—is that it [the legislature] had the right to provide that their election or appointment should be for a definite or an indefinite term, absolutely or conditionally . . . . It follows, if a fair construction of the statute, providing for their election or appointment, results in the conclusion that, under it, they were only intended to be conditionally elected for a specified term, that effect must be given to the legislative intent, notwithstanding the provisions of Article VI, section 4, for not otherwise can they 'be elected or appointed, as may be directed by law' ". (p. 50). The Court concluded that, since the Township Act provided for a definite six year term for township supervisors conditioned only that they could be removed by the quarter sessions court, the legislature had shown its intent to circumvent the provisions of Article VI, §4.

In *Milford* the Court further said: ". . . it may not be amiss to call attention to the fact that, under the clause last quoted [the *second* sentence of Article VI, §4], despite its seeming exclusiveness, the legislature would appear to have the right to regulate the 'pleas-

---

[8] Under this provision, the legislature may create new offices (*Northumberland County v. Zimmerman*, 75 Pa. 26), or when creating an office, fix the qualifications of those to be appointed (*In re Registration of Campbell*, 197 Pa. 581, 47 A. 860).

ure' of the appointing power in removing its appointees: Arthur v. Phila., 273 Pa. 419; Sailer v. Phila., 273 Pa. 424; Patton v. Phila., 273 Pa. 427" (p. 51). In *Arthur* the chief of the bureau of city property, appointed by the director of public works of Philadelphia was notified by the director of his dismissal for certain specified reasons: the bureau chief, denying the charges, instituted mandamus for reinstatement to his position. The lower court found only one of the reasons for dismissal supported by the evidence but dismissed the action on the ground that the bureau chief was an appointed officer within Article VI, §4, and, therefore, subject to dismissal at the pleasure of the power which appointed him. Under a statute applicable to Philadelphia, the bureau chief was within its provisions that no classified service officer "shall be removed, discharged or reduced in pay or position except for just cause which shall not be religious or political". This Court held that the statute, insofar as it regulated the right to dismiss officers in the classified service, under Article VI, §4 was limited to such officers as do not come within the term "appointed officers" whose removal is permitted at the pleasure of the appointing power. To the same effect were *Sailer* and *Patton*.

Lastly, the Court in *Milford* stated: ". . . although article VI, section 4, is not limited to what are frequently termed constitutional officers, it is not applicable where the legislature, having the right to fix the length of a term of office, has made it determinable, by judicial proceedings, on other contingencies than the mere passage of time" (p. 52). *Milford* recites no case law in support of this proposition.

*Commonwealth ex rel. v. Davis*, 299 Pa. 276, 149 A. 176, involved the ousting of an elected mayor imposed as part of a judicial sentence upon his conviction for misbehavior in office and we upheld this method

of removal as a necessary corollary to the first sentence of Article VI, §4.

In *Commonwealth ex rel. v. Hiltner*, 307 Pa. 343, 161 A. 323, the treasurer of the Borough of Norristown had been appointed by the town council pursuant to the town's charter and under an act of 1831 which provided for an annual term and removal only for cause. In referring to Article VI, §4, the Court stated: *"The language of this section is clear and unequivocal, and it is obvious that it is inconsistent with an existence of a right to remove from office only for cause"* and held that the treasurer could be removed at the pleasure of the town council. See also: *Commonwealth ex rel. v. Kelly et al.*, 322 Pa. 178, 185 A. 307.

In *Weiss v. Ziegler et al.*, 327 Pa. 100, 193 A. 642, a board of school directors had appointed Weiss as superintendent of schools for a four year term under a statute which created the office, set a fixed term thereof and provided for removal only for cause. The school board removed Weiss for a cause which the lower court found unjustified. However, the lower court dismissed Weiss' bill in equity upon the ground that under Article VI, §4, the board had the right to remove Weiss at its pleasure. This Court affirmed solely upon the ground that equity lacked jurisdiction. However, the Court stated: "The legislature may very well say that it is desirable that certain officers should be appointed but, for reasons which it deems sufficient, they should not be subjected to removal at pleasure and, if so minded, the legislature may of course provide for such officers, the Constitution containing no provision to the contrary" (p. 104). See: *Commonwealth ex rel. Smillie v. McElwee et al.*, 327 Pa. 148, 158, 159, 193 A. 628.

In *Commonwealth ex rel. Kelley v. Clark et al.*, 327 Pa. 181, 193 A. 634, the Court passed upon the validity of a statute and amendment thereto which purported

to effect a change in the manner of appointment of three civil service commissioners (non-constitutional officers) in Philadelphia. In holding the statutes invalid, the Court reaffirmed (p. 188): "That the constitutional method of removal provided in Article VI, section 4 is exclusive and prohibitory of any other mode which the legislature may deem better or more convenient . . ." but then added, citing *Georges* and *Milford* "*except where the legislature in creating the office prescribes a different method . . .*". In *Suermann et al. v. Hadley*, 327 Pa. 190, 193 A. 645, the Court again reiterated that "the constitutional method of removal of appointive public officers, . . . is exclusive" but did recognize the right of the legislature to remove nonconstitutional officers in three instances. (p. 200): (1) "where the legislature in its act of creation attaches to an office a condition of tenure or of the right of removal", citing *Milford, Georges* and *Weiss*: (2) "where the legislature sets up a new, comprehensive system of operation of one of its agencies or a department of such agency, differing materially from the system it supplants, and abolishes the offices existing under the old system"; (3) "where there is a complete abolishment of an office or a repeal of the acts by which an agency is created".

In *Commonwealth ex rel. Schofield v. Lindsay*, 330 Pa. 120, 198 A. 635, we held that the city council of Pittsburgh could remove a city clerk which it had appointed at its pleasure despite the fact that, under the statute creating the office, a *fixed term* had been established and removal for misbehavior provided. The court stated, inter alia, ". . . *Any day* after the relator was appointed city clerk he could have been removed by the appointing power regardless of *either* phrase because the Constitution lodges the power of removal in the appointing power, and *what the Constitution lodges no legislature can dislodge or diminish*" (p. 122).

In *Kraus v. Philadelphia,* 337 Pa. 30, 10 A. 2d 393, Kraus had been appointed as assessor (a non-constitutional officer) by the Board of Revision of Taxes of Philadelphia, under a statute which provided for a *fixed* five year *term* and for removal for incompetency and neglect or refusal to perform duties. Acting under a reorganization statute the board later removed him, and, in upholding this removal, we stated: ". . . The appointing bodies are there endowed with the untrammeled right to dismiss at will, without the need of specifying any reason for the action: . . .".

In *Commonwealth ex rel. Houlahen v. Flynn,* 348 Pa. 101, 34 A. 2d 59, the Court upheld the right of Allegheny County Commissioners to remove at will a member of the Board of Property Assessment, Appeals and Review prior to the expiration of his statutorily fixed term. The Court said (p. 105) : "The Constitutional method of removal prescribed by Article VI, section 4, is exclusive, *except where the legislature in creating the office expressly or impliedly designates* a different method within the scope of Article XII, section 1". (Emphasis supplied.) *Houlahen* is noteworthy in several respects: (1) relying on *Milford* and *Weiss,* Article XII, §1 is once again held to restrict the application of Article VI, §4: (2) impliedly, at least, *Houlahen* recognized as the sole exception to Article VI, §4, an instance where the legislature in creating the office has both fixed the term and made it determinable by judicial proceedings; (3) *even though the statute provided for rotated or staggered terms the Court found therein no legislative intent to circumvent Article VI, §4.* In *Ruch v. Wilhelm, etc., et al.,* 352 Pa. 586, 43 A. 2d 894, in upholding the dismissal at will of a state policeman (an employee and not a public officer) Mr. Justice (later Chief Justice) STERN, in a footnote stated: *"If the members of the State Police Force were to be considered 'officers' within the meaning of Article*

*VI, Section 4, of the Constitution, even the legislature, of course, could not restrict the power of the Commissioner to remove them at will."* (Emphasis supplied.)

In *Commonwealth ex rel. Reinhardt v. Randall,* 356 Pa. 302, 51 A. 2d 751, Reinhardt, claiming to have been duly appointed as a member of the Philadelphia Housing Authority, instituted quo warranto proceedings to oust Randall as a member of that Authority. The statute which created the Authority provided a *system of rotated or staggered terms* involving initial appointments for terms of varying duration, subsequent appointments for full terms and the filling of irregular vacancies only for an unexpired term. The city controller had appointed Randall for a five year term beginning September 1944 and in June 1946 removed him without cause and appointed Reinhardt his successor. We upheld the right of the city controller to remove at pleasure and, after quoting Article VI, §4, stated: ". . . The respondent, appointed by the city controller, was an appointed officer and directly within the provision authorizing removal at the pleasure of the appointor, the city controller. When the controller removed the respondent in June, 1946, his right to the office was terminated. His removal created a vacancy in the office to which the city controller was authorized to appoint for the unexpired term. Nothing could be plainer. . . ." (p. 305). In *Marshall Impeachment Case,* 360 Pa. 304, 309, 310, 62 A. 2d 30, the court set forth certain principles defining the manner of removing public officers, whether their offices were created by the Constitution or by the legislature: (1) relying on *Bowman,* that a constitutional officer, whose office the legislature did not create and cannot abolish, cannot be removed in any other way than in the manner provided in the Constitution; (2) relying on *Georges,* "if an office has been provided for by the Constitution but a method of removal different from the constitutional

method was in effect prior to the adoption of the Constitution, such other method may still be followed in addition to the method contained in the Constitution"; (3) relying on *Vesneski*, "if the office is a legislative office only and if the Legislature has not provided a different method of removal from office, the constitutional method of removal must be followed"; (4) relying on *Milford* and *Weiss*, "if an office is the creature of the Legislature, the latter can establish a method for the incumbent's removal," and the legislature has the right to make a term of office determinable, " 'by judicial proceeding, on other contingencies than the mere passage of time.' " See: *Commonwealth ex rel. Bunch v. Beattie et al.*, 364 Pa. 572, 73 A. 2d 664.

In 1956, *Watson v. Pennsylvania Turnpike Commission*, 386 Pa. 117, 125 A. 2d 354, was decided by this Court. On May 4, 1952 Watson was appointed by the then Governor, John S. Fine, as a member of the Pennsylvania Turnpike Commission for a term expiring June 4, 1961 and this appointment was duly confirmed by the Senate. On December 6, 1955 Governor Leader, acting in reliance upon the authority he believed vested in him as the appointing power under Article VI, §4, removed Watson from office. Watson then instituted an action of mandamus against the Commission. The Court stated: "The sole question involved is whether the Governor had the power under the Constitution and laws of the Commonwealth to remove from office, at his pleasure, a member of the Pennsylvania Turnpike Commission during the fixed term of office for which he was appointed and confirmed" (p. 120). We held that the Governor did not have the power, at pleasure, to remove Watson as a member of the Turnpike Commission. Relying on *Bowman, Milford, Weiss* and *Marshall*, the Court said (p. 123) : "It is therefore established in this State beyond respectable controversy that, where the legislature creates a public office, it

may impose such terms and limitations with reference to the tenure or removal of an incumbent as it sees fit. There is nothing in the Constitution prohibiting such action while, on the other hand, Article XII, Section 1, expressly admits of it. Of course, where the legislature, in creating a public office, imposes no terms or limitations on the duration of an incumbent's tenure or the mode of his removal, the method of removal prescribed by Article VI, Section 4, of the Constitution applies: [citing Marshall and Beattie]." Further, "The question, then, as to whether the tenure or removal of an appointee of a legislatively created office has been so conditioned by the legislature as to exempt the incumbent from removal by the Governor, at his pleasure, under his constitutional power, is one of intent to be gleaned from the statute creating or regulating the office" (pp. 123, 124). The Court found in the statute creating the Turnpike Commission a legislative intent to condition the tenure of a member of the Commission in the statutory provision that the terms of such a member be rotated or staggered.

In *Mitchell v. Chester Housing Authority*, 389 Pa. 314, 132 A. 2d 873, we upheld the right of the Chester Housing Authority, the appointing power, to remove the secretary and executive director of the Housing Authority and in *Buell v. Union Township School District*, 395 Pa. 567, 150 A. 2d 852, we upheld the right of school directors to remove, at their pleasure, the secretary and treasurer of the board.

From a review of all our prior decisions on this subject certain conclusions are inevitable. An *appointed constitutional officer* (i.e., the incumbent of an office expressly named in the Constitution) is subject to removal at the will of the appointing power in accord with the provisions of Article VI, §4, with one exception: if, *prior to* the adoption of the Constitution, there was in effect a method for the removal of such officer,

then such method, *in addition to the constitutional method,* may be pursued. An *appointed non-constitutional officer* (i.e., the incumbent of an office created by the legislature) is subject to removal, by reason of Article XII, §1, in the following manner: if the legislature in the act of creation of the office has *not* provided a method of removal different from the constitutional method, then the latter *must* be followed; if the legislature in the act of creation of the office has provided a method of removal, then the legislative method *must* prevail.

The real difficulty arises—readily apparent from a study of our prior case law—in determining whether in the statute creating the office the legislature *did intend* to provide a different method of removal and, in so determining, the wording of the statute must prevail.

Appellee's position is that the statute which created the instant Board evidenced an *implied* intent on the part of the legislature to provide a different method of removal for Board members and that such intent is to be *implied* from that provision of the statute which provides that the Board members shall have staggered or rotated terms. Reliance is placed by appellee on *Watson,* supra, which held that such legislative intent might be implied from a statutory provision for staggered or rotated terms.

The statute which created this Board is silent as to *any* method of removal of Board members and a legislative intent that Board members were to be subject to removal by a method, other than by Article VI, §4, must arise, if at all, by *implication* rather than by *expression,* of such intent. The statute which created the Turnpike Commission, considered in *Watson,* and the statute which created this Board are virtually identical in that both provide for staggered or rotated terms and make no specific provision for removal. Un-

less *Watson* be reconsidered, then its ruling will control the determination of the present issue.

Several reasons, reluctantly, compel me to disagree with *Watson.* In the first place, *Houlahen,* supra, and *Randall,* supra, dealt with statutes, creating legislative offices, which contained provisions for rotated or staggered terms; from such statutory provisions—virtually identical with the statutes in *Watson* and in the instant case—no legislative intent as to the manner of removal was gleaned in *Houlahen* and *Randall.* *Houlahen* and *Randall* cannot coexist with *Watson.* In the second place, if a staggered or rotated term provision is indicative of a legislative purpose to condition the terms or tenure of appointees to a legislative office, then certainly a statutory provision fixing a definite term for such appointees or a provision permitting the removal of such appointees for cause reflects such legislative aim with greater strength and force. However, our prior case law had rejected the implication of any such legislative purpose in both instances: *Houseman,* supra, *Lane,* supra, *Likeley,* supra, *Madden,* supra, *Hiltner,* supra, *Clark,* supra, *Lindsay,* supra, *Kraus,* supra, *Houlahen,* supra, and *Randall,* supra, permitted the removal of nonconstitutional officers whose terms of office were definitely fixed by legislative enactment; *Hoyt,* supra, *Arthur,* supra, *Hiltner,* supra, *Lindsay,* supra, *Kraus,* supra, and *Beattie,* supra, permitted the summary removal of legislative officers even though the statutes creating such offices provided for removal for cause.

Our prior case law reveals a strong judicial reluctance, in the absence of a clear and unequivocally expressed legislative intent, to deprive the appointing power of a legislative officer of the right to remove from such office at will. This judicial reluctance is fully justified. Inherent in the clear and plain language of Article VI, §4, is the intendment that *gener-*

*ally* all appointed officers, constitutional or non-constitutional, be removable at the will of the appointing power and that such method of removal is conducive to more responsible and more efficient government. Responsibility for the actions or omissions to act on the part of subordinate government officials in this manner can be more readily fixed on the appointing power. In this connection, the language of our Court in *Lindsay,* supra, is appropriate (p. 123) : "Article VI, section 4 of the Constitution is an expression of a governmental principle which is supported both by reason and authority. It is a tenet of good government that except in those cases where the public welfare requires that an official charged with important governmental functions should be protected against interference on the part of the executive and in those cases where special classes of public servants, such as policemen and firemen, are placed under civil service protection, the power of removal is correlative with the power of appointment. The liability to summary removal attaches with manifest appropriateness to those subordinates who occupy close confidential relations with their superiors in the public service".

*Watson,* supra, expressed the apprehension that, if the right of the Governor to summarily remove a Turnpike Commissioner were recognized, he might remove all the Commissioners at one time and thus hamper the work of this important governmental body. From such apprehension it does not follow that the legislature, by the provision for staggered or rotated terms, intended that the Governor could not at *any* time remove *any* Commissioner. The legislature could have provided a method of removal if it intended to thwart any such occurrence as apprehended in *Watson.* The failure of the legislature to provide for any different method of removal of the Commissioners is eloquently indicative of the legislative purpose that such removal could be

accomplished within the aegis of Article VI, §4, particularly in view of the presumption that the legislature acted with knowledge of the law on the subject at the time the statute was passed.

In *Houlahen,* supra, even though the statute contained a provision for staggered or rotated terms, the late Mr. Justice STEARNE, speaking for this Court, said (p. 104) : "The terms of the members of the board are not made determinable, by judicial proceedings, on other contingencies than the mere passage of time. The legislature did not stipulate that a special procedure of removal from office was to be followed. We are therefore unable to hold that [Houlahen] is an exception to the operation of the general rule enunciated in Article VI. Nor are we able to read into the appointing statute any *implication* that the legislature intended to forbid dismissal without cause. The words of the statute are direct and unambiguous. The letter of it is not to be disregarded, therefore, under a pretext of pursuing its spirit."

My reconsideration of *Watson* indicates that it should not be followed.[9] No implication of a legislative purpose to deprive the appointing power of the right to summarily remove a member of this Board arises from the statute which created this Board. Absent any indication of such legislative purpose in the statute, the power was in the Governor to remove, at his pleasure, Bowers as a member of this Board.

I would reverse the judgment entered in the court below.

---

[9] If *Watson* be followed, query: In what manner can a member of this Board be removed? If only for cause—which the statute does not provide—who or what tribunal is to determine whether the cause is justified?

DISSENTING OPINION BY MR. JUSTICE COHEN:

As I read the opinion of the Court, I understand the conclusions there reached to be as follows:

(1) The state legislature may limit the appointing power's power to remove at pleasure the incumbent of a legislatively created public office;

(2) Provision for staggered terms of office in the statute creating a public office impliedly reveals a legislative intent to prohibit exercise of a power to remove at pleasure; and

(3) (As a conclusion of the writer of the opinion only) appointed public officers in Pennsylvania exercising quasi-judicial powers may not be removed by the appointing power under any circumstances.

Before proceeding to analyze each of these conclusions, we should review our action in this area so that the full impact of the majority opinion will be recognized. *First,* although Article VI, §4 of our state Constitution, promulgated in 1874, has remained intact for eighty-six years and throughout several dozens of cases involving removals, it was not until *Watson v. Pennsylvania Turnpike Commission,* 386 Pa. 117, 125 A. 2d 354 (1956), (also written by Chief Justice CHARLES ALVIN JONES) that this Court held improper an attempted removal of an appointed public officer. This was so throughout the many cases—as summarized in the present dissenting opinion of Justice BENJAMIN R. JONES—that came before our Court on this subject. *Second,* the Constitutional Debates are perfectly clear that no restriction on the pleasure of the appointing power to remove was intended. *Third,* the doctrine that the legislature might restrict the pleasure of the appointing power to remove first arose as *dicta* and was repeated only in very limited terms in cases dealing solely with *elected* officers. These cases are discussed below. *Fourth,* we have many times approved removal of public officers appointed to statutorily-created of-

fices under provisions permitting removal only for cause (a much more compelling situation for finding a legislative intent to limit the removal power than a case, as here, presenting nothing but a provision for staggered terms). *Fifth,* we have previously held in two cases that removals were proper even though the incumbents filled legislatively-created offices on a staggered term basis. *Sixth,* we have never before applied the federal precedents concerning removal to a case before us even though several of our cases in which dismissal was upheld deal with agencies exercising some quasi-judicial functions. The length to which the majority opinion goes has contradicted so much history, case law and the needs of responsible public service that I can only express my complete disagreement with a feeling of hopeless resignation before the magnitude of its error.

I know of no doctrine of law which states that a "constitution" is written only for the age in which it is promulgated. And so, I assume that the provisions of Article VI, §4, of our present state Constitution, including the provision for removal of appointed public officers, are as applicable today as they were in 1874. I find nothing in the second sentence of that section limiting its applicability to constitutional officers only, and the debates at the Constitutional Convention of 1873 are absolutely clear that no such limitation was intended. The opinion of the majority ignores these debates, recognizing their lack of support for its position, in appalling fashion. We deal here not with the interpretation of ambiguous statutory language, where we find little help in the Legislative Journal and where, in fact, by our past decisions we are prohibited from referring to the Journal, but with an extensive, full-scale discussion of constitutional language heatedly debated at Constitutional Convention and unambiguously set forth in explicit language—an authority long recog-

nized as a proper source of constitutional interpretation. Moreover, no court has paid more deference to historical origins and discussions of constitutional provisions than has the Supreme Court of the United States,[1] and I find the majority's attempt to support its head-in-the-sand approach on this point lamentable.

The explicit language and original intent of the constitutional provision in question being so clear to the contrary, how have we arrived at the present state of confusion in which we pay homage to a legislative power to restrict removal? In my opinion we have done so through a series of judicial glosses, usually irrelevant to the case at hand and never examined with care. The doctrine was first expressed in *Bowman's Case,* 225 Pa. 364, 74 Atl. 203 (1909), where the validity of the removal under a statute of an *elected* justice of the peace (a constitutional officer) was questioned, the statutory removal method being different and easier than the method provided for *elected* officers in the third sentence of Article VI, §4. The *Bowman* Court held the statutory method invalid and, in bad *dictum,* ventured beyond that precise issue to say that nonconstitutional officers may not be within the constitutional provisions for removal. This *dictum,* needless to say, is the heart of the present problem; and we might question why *Bowman's* Court would even bother to make such a statement under the circumstances.

To my mind, it was exactly "the circumstances" of *Bowman's Case* which influenced the Court to say what it did. The third sentence of Article VI, §4, provides for removal of *elected officers,* for cause, by the Gov-

---

[1] E.g., *Pollock v. The Farmers' Loan & Trust Company,* 157 U. S. 429 558-570 (1895) ; *Knowlton v. Moore,* 178 U. S. 41, 95-106 (1900) ; *Everson v. Board of Education of the Township of Ewing,* 330 U. S. 1, 8-13 (1947) ; *Cohens v. Virginia,* 19 U. S. (6 Wheat.) 264, 417-420 (1821).

582

ernor, after notice and hearing, upon the address of two-thirds of the Senate. I can recall no instance of a removal under this provision; but even if my recollection be faulty, it takes little thought to realize that removal under it is a most difficult process. If it were the sole method of removal for nonconstitutional officers, as *Bowman's Case* said it is for constitutional ones, hundreds of elected public officers would hold office in a way hardly consonant with the needs of a democratic society.[2]

Additionally, this third sentence is a protective provision, guaranteeing[3] that elected constitutional officers shall not be removed except under the most unusual circumstances. Common sense dictates that such protection is not justified on a universal scale and should not be extended unduly.

Contrast the position of an appointed officer. Unlike the conflict between a cumbersome constitutional method of removal and statutory attempts to ease the burden where an elected officer is involved, the simple constitutional method for removal of *appointed* officers is always posed against legislative attempts to make the removal more difficult or impossible.[4] Thus, the problem has always been presented in diametrically opposed situations—in the one case, whether the legislature may facilitate an otherwise difficult removal; in the other case, whether it may impede or prevent an

[2] Accordingly, our laws provide other methods of removal of elected nonconstitutional officers. E.g., Act of May 4, 1927, P. L. 519, §905, added by the Act of July 18, 1935, P. L. 1290, §2, 53 PS §45905; Act of June 24, 1931, P. L. 1206, §604, 53 PS §55604.

[3] Whether *Bowman's Case* itself is still the law insofar as even constitutional officers are concerned is actually not a closed question, as witness this Court's query concerning election officers in the *Milford Township Supervisors' Removal Case*, 291 Pa. 46, 48, 139 Atl. 623, 624 (1927).

[4] Except upon conviction of misbehavior in office, of course.

otherwise easy removal. Accordingly, whatever illogic may be present in limiting the third sentence to constitutional officers only, while applying the second sentence to all officers—constitutional and statutory alike —it is a highly rational illogic. The needs of republican government are certainly best served when its appointed officials are immediately responsible and responsive to their superiors and not immunized from removal by the latter. Usually, the appointing power is itself lodged in an elected officer, and his mandate to effect policies advocated by him should not be thwarted by subordinates. Elected officers, on the other hand, deserve somewhat greater protections; and both the Constitution and the relevant statutes recognize this. Therefore, while I admit to a superficially inconsistent approach in our judicial analysis of these matters, it is an approach keyed to the best tradition and duty of the judiciary in the field of public law— that of applying our basic document of government in the light of that philosophy of government which gave it birth, which sustained it through the years and which has contributed to making our governmental institutions bulwarks of a free democratic society in 1960 as well as in 1874.

The contradictions found in the subsequent case-by-case history are well summarized in the dissenting opinion of Justice BENJAMIN R. JONES and can best be explained by recognizing that in no case was a careful reappraisal made. However, one case is so important that it must be examined. *Milford Township Supervisors' Removal Case,* 291 Pa. 46, 139 Atl. 623 (1927), again involved an attempt to remove *elected* officials, this time nonconstitutional ones. Under the applicable 1917 statute a petition was brought in the local court of quarter sessions to remove township supervisors allegedly guilty of derelictions of duty. The *Milford* Court upheld this resort to the statutory proceedings;

but instead of relying on the necessities of such a holding, as discussed above, it decided that Article XII, §1, of the Constitution impliedly extended a right to the legislature to limit application of Article VI, §4, where a nonconstitutional officer was involved.

Now, Article XII, §1, is a perfectly innocuous and reasonable provision. It gives to the General Assembly power to provide for the election or appointment of officers whose selection is not provided for in the Constitution. As Buckalew pointed out,[5] this power would undoubtedly have so existed without inclusion of Article XII, §1, in the Constitution. On its face it simply represents an attempt to foresee certain future governmental requirements. *It clearly has nothing at all to do with the removal of public officers.*

The observation in the *Milford* case that, where the legislature has provided for selection of an officer for a definite term and has set forth a removal method in the statute, such legislative expression supersedes Article VI, §4, because otherwise Article XII, §1, would be transgressed, is untenable. *That a statute may provide for the election or appointment of an officer is a matter wholly distinct from removal.* Our Constitution itself is replete with provisions for selection of officers—all separate from its removal provisions. These two powers obviously may conflict—as where a person serving a fixed term is removed for misbehavior before the expiration of his term—but this is a conflict required by our governmental structure and principles, not a conflict to be avoided and abhorred.

Other aspects of the *Milford* case are equally puzzling. The chief precedents relied upon to sustain the Court's position in that case were *Commonwealth ex rel. Braughler v. Weir,* 165 Pa. 284, 30 Atl. 835 (1895),

---

[5] Buckalew, An Examination of the Constitution of Pennsylvania (1883) 228.

and *Arthur v. Philadelphia,* 273 Pa. 419, 117 Atl. 269 (1922). The former case involved a legislative attempt to abolish completely an office which it had created previously, an attempt which was upheld by the Court. Obviously, the elimination of an office poses quite a different problem from the removal of an incumbent of an existing office and is wholly irrelevant to the latter issue.[6] Legislative power to abolish unneeded positions established by it is unquestionable; legislative power to regulate removal of an officer, however, raises a constitutional question unrelated to problems of abolishing an office.

The *Milford* Court's treatment of the *Arthur* case is even more disquieting. *Arthur* is cited as authority for the proposition that the legislature may limit the removal power under the second sentence of Article VI, §4. In fact, the *Arthur* case can be cited for only two principles, both of which lead to a conclusion completely contrary to its use in the *Milford* opinion. First, *Arthur* recognized the power of the legislature to regulate dismissals of "employees" who properly qualified under statutory civil service provisions. Second, *Arthur* held that the legislature could *not* limit the appointor's power to remove persons appointed by him who qualified as "officers" under the Constitution by including those persons in the civil services. The actual result in the *Arthur* case was a holding that a bureau chief, an "officer," could be dismissed at the pleasure of the appointing power notwithstanding the statute in question and that insofar as the statute attempted to restrict his removal, it was unconstitutional. These conclusions, clearly, are exactly the opposite of the expression appearing in *Milford.*

---

[6] Unless, of course, the abolishment of the office is just a subterfuge to remove the incumbent. *Suermann v. Hadley,* 327 Pa. 190, 193 Atl. 645 (1937), supports both the text's and this note's statements.

Again, we might ask why the Court in *Milford* so strained to overreach the problem before it, remembering that the *Milford* case involved only nonconstitutional *elected* officers and could have been decided upon the distinctions discussed above between removal of elected and appointed officers. No obvious answer is discernible although the Court does evince concern over the possibility that thousands of local election officials would be virtually irremovable if the third sentence of Article VI, §4, were held to be the exclusive method of removing elected officers. This conjectured concern has no relevance to the problem of removing *appointed officers,* and it remains a mystery why the latter was so mistreated. Also unanswered remains the question of election officers, themselves constitutionally provided for (Article VIII, §14).[7]

The final and crowning mystery of the *Milford* case appears in the Court's concluding language: ". . . although article VI, Section 4, is not limited to what are frequently termed constitutional officers, it is not applicable where the legislature, having the right to fix the length of a term of office, has made it determinable, by judicial proceedings, on other contingencies than the mere passage of time. . . ." 291 Pa. 46, 52, 139 Atl. 623, 625. Considering that we are now concerned with legislative limitations upon removal by resort to fixed terms, staggered terms, cause provisions, etc., we may well wonder how any court could arrive at the present result by relying upon the *Milford* case. Even *Milford,* in ceding power to the legislature to restrict removals, did so only in the above-quoted terms: *where the legislature provides a method of removal which requires a judicial proceeding.* To understand this very restricted legislative power, we need go back only a few sentences in the opinion where the Court

---

[7] See note 3, supra.

expressed its conviction that the legislature should be allowed to implement the *first* sentence of Article VI, §4 (providing for removal upon conviction of misbehavior in office or other infamous crime), by a general act permitting removal upon judicial decision that an officer has not behaved well while in office.

Thus, the *Milford* case concludes with principles not even remotely justifying the present use made of that case, a use which has led to the current confusion without any reappraisal of Article VI, §4. My own view is that we should and must restore to that section its original meaning rather than create the confusion that is occasioned by the majority opinion.

The created confusion is aggravated by the majority's attempt to seek refuge in the Milk Control Law to sustain the view that the legislature may limit the power to remove an appointee. First, the fact that the legislature, in that law, actually has exercised such a power simply begs the question since the issue before us is whether it enjoys the constitutional right to exercise the power. Second, the majority again either overlooks or ignores the established case law which has given the Milk Control Commission the same status as the Public Utility Commission; that is, both are legislative agents subject solely to the will of the legislature. In fact, the legislature is the appointing power as we pointed out in *Commonwealth ex rel. Woodruff v. Benn*, 284 Pa. 421, 131 Atl. 253 (1925), a Public Utility Commission case.

That the Milk Control Commission has similar status has already been clearly determined. In upholding the constitutionality of the Milk Control Act initially, in *Rohrer v. Milk Control Board*, 322 Pa. 257, 186 Atl. 336 (1936), this Court adopted the dissenting opinion of then President Judge KELLER of the Superior Court who flatly stated that the Milk Control Board was "the legislature's agent" and that he saw

no difference between the Milk Control Act and the Public Service Company law. 322 Pa. 257, 277. We reaffirmed this principle in *Snyder v. Barber,* 378 Pa. 377, 106 A. 2d 410 (1954); and I can now conclude nothing other than that members of both the Public Utility Commission and the Milk Control Commission may not be removed at pleasure by the Governor because he is not the "appointing power" and that this result would follow even in the absence of the statutory language of the Milk Control Law quoted in the majority opinion.

Thus, I conclude that there exists no legislative power to restrict the pleasure of the appointing power to remove an appointed officer. On this conclusion alone I am content to hold that the present appellee's removal was proper. However, the majority's opinion requires some additional comment.

Justice BENJAMIN R. JONES' dissenting opinion treats carefully and extensively the question of legislative intent to restrict removal once we assume its power to do so exists. On this assumption only—with which I, of course, disagree—I am in complete accord with his views and would add only a few words.

First, as is pointed out, the "staggered term" doctrine overrules both *Commonwealth ex rel. Houlahen v. Flynn,* 348 Pa. 101, 34 A. 2d 59 (1943), and *Commonwealth ex rel. Reinhardt v. Randall,* 356 Pa. 302, 51 A. 2d 751 (1947). Yet, the majority's opinion makes no mention of these prior decisions, as indeed they were ignored in the *Watson* opinion. This fact, I find, contributes to my feeling that the majority's opinion is hardly the result of careful thought and reflection.

Second, I find it incredible that we now hold staggered terms to reveal an implied legislative intent to prevent removal when we have held so often previously that explicit legislative language forbidding removal

except for cause was ineffective against the constitutional language.[8]  The present holding departs from the path of logic in this respect.

Third, I have not yet discerned what magic the majority finds in staggered terms as a matter of good administration which imparts such a powerful effect to their use.  True, the hope must be that staggered terms will permit a certain continuity in governmental offices; but this hope presupposes that the powers of office will be properly and effectively exercised.  I am sufficiently committed to the theory of executive responsibility that I cannot attribute to the use of staggered terms the power to insulate an executive appointee from removal as a matter of good governmental administration any more than I can do so as a matter of constitutional doctrine.

Beyond the issues of legislative power and legislative intent, the writer of the majority opinion has added certain gratuitous observations to his opinion which have the support neither of a majority of this Court nor of existing law.  Neither of the parties to this case presented a single word to us—orally or in briefs—which would indicate that either considered the federal cases remotely helpful; yet the writer of the majority opinion presents them to substantiate his otherwise unsupportable opinion.  The parties' non-reliance is justified—until now no Pennsylvania case has ever referred to the federal cases.

My shock at this approach is epitomized best by reference to a single sentence in the opinion, "Nor is it of presently material significance that the Constitution of the United States, under which the cases above cited arose, does not contain a provision, such as Article VI, Section 4, of the Pennsylvania Constitution."  To this, I ask hopelessly, "why isn't it?"  It is precisely because

---

[8] See dissenting opinion of Mr. Justice BENJAMIN R. JONES.

our state Constitution does contain such explicit language that the federal doctrine has always been and still is inappropriate to our cases; any counsel who argued otherwise before us would, I am sure, be singularly unsuccessful and justifiably criticized.

The opinion goes on to imbue the Pennsylvania Labor Relations Board with unusual qualities: Unquestionably, part of its functioning is quasi-judicial in nature just as part is purely executive.[9] However, to find legislative power in the Board's right to promulgate rules necessary to carry out its own powers goes well beyond traditional thought which has limited such a power to rate-making[10] and determining prices.[11] Even this Court—in fact, the writer of the present majority opinion—has relegated our most famous decision in this field, the *Benn* case, to the category of "truly *sui generis*."[12]

Finally, we have in the past upheld the removal of quasi-judicial officers without even questioning the removals because of their quasi-judicial status. *Commonwealth ex rel. Houlahen v. Flynn,* supra, involved removal of a member of a Board of Property Assessment Appeals and Reviews; and both *Commonwealth ex rel. Kelley v. Clark,* 327 Pa. 181, 193 Atl. 634 (1937) and *Suermann v. Hadley,* 327 Pa. 190, 193 Atl. 645 (1937), support the same conclusion. The constitutional protection from removal given to judges of courts of record involves far different considerations, for such judges are not appointed other than to fill a vacancy

---

[9] Act of June 1, 1937, P. L. 1168, as amended, §§7, 10,

[10] *Commonwealth ex rel. Woodruff v. Benn,* 284 Pa. 421, 434, 131 Atl. 253 (1925).

[11] *Snyder v. Barber,* 378 Pa. 377, 106 A. 2d 410 (1954) ; *Rohrer v. Milk Control Board,* 322 Pa. 257, 186 Atl. 336 (1936).

[12] *Watson v. Pennsylvania Turnpike Commission,* 386 Pa. 117, 127, 125 A. 2d 354 (1956).

until an election can be held. The appointing power—The Governor—simply is an instrument by which an independent branch of government is maintained until the normal process of selection takes place. A member of the Labor Relations Board—an agency integrated wholly into the executive branch of our state government—is hardly in a position to claim a similar protection.

In summation, therefore, I find myself at odds with the opinion of the Court in every respect, including the personal observations of its writer which are not adhered to by a majority of the Court. Its failure to deal with the cogent history of Article VI, §4, its studied avoidance of existing precedent[13]—or the lack of precedent regarding the quasi-judicial issue—and its strained and incorrect reliance upon the Milk Control Law all lead me to conclude that the present decision and opinion represent no more than an attempt to sustain by sheer weight of words the *Watson* decision—itself indefensible on all points.

For the reasons stated, I would reverse the order of the court below and enter judgment for appellants.

---

[13] The extent to which precedent has been ignored goes even further than indicated in the text. All attorneys general (most recently Schnader, Reno, Duff, Chidsey and Woodside) had, prior to the *Watson* case, explicitly advised their respective governors that the governor could at his pleasure remove any appointee (excepting members of the Public Utility Commission). Moreover, no attorney general since 1874 had ever indicated that any restriction on the Governor's power to remove his appointees at pleasure existed. Finally, Governor Martin in 1943 actually removed summarily a member of the Pennsylvania Labor Relations Board.