Snyder, Appellant, *v.* Barber, Appellant.

378

Argued May 27, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Sabato M. Bendiner,* with him *Frank W. Hatfield* and *Busser & Bendiner,* for plaintiff.

*Harry F. Stambaugh,* Special Counsel, with him *Frank F. Truscott,* Attorney General, for Commonwealth.

OPINION BY MR. JUSTICE MUSMANNO, June 28, 1954:

On August 20, 1936, John J. Snyder was appointed to the Milk Control Board, and when that Board was

replaced by the present Milk Control Commission he was chosen and confirmed as a member of the Commission for a term of four years ending May 1, 1941, to continue until a successor should be selected and qualify.

Since no successor was appointed to succeed him on May 1, 1941, he continued in office until March 5, 1953, when a successor having qualified, Snyder's services terminated. During this entire incumbency Snyder was paid a salary of $6,000 per annum, even though the Legislature had increased the salaries of the Members of the Milk Control Commissions, by the Act of June 30, 1947, P. L. 1173, sec. 1 from $6,000 per annum to $6,750 per annum, and by the Act of April 28, 1949, P. L. 776, sec. 3 from $6,750 per annum to $10,000 per annum.

The State Treasurer refused to pay Snyder the higher salaries, interposing as a bar to such increases in compensation Section 13 of Article III of the Pennsylvania Constitution: "No law shall extend the term of any public Officer, or increase or diminish his salary or emoluments, after his election or appointment."

On March 3, 1953, Snyder brought an action in equity against Charles R. Barber, State Treasurer and Weldon B. Heyburn, Auditor General of the Commonwealth of Pennsylvania, to compel them to pay him the amounts due under the legislative salary increases. The defendants filed preliminary objections to the Bill, urging the constitutional limitation above quoted. The preliminary objections were overruled and leave was granted the defendants to answer. The answer, however, merely reiterated the constitutional bar and the Court prepared to grant judgment on the pleadings. Before doing this the Court directed the parties to enter into a stipulation as to the amount due the plaintiff. The parties agreed that that amount would

be $12,653.43, of which $11,847.19 was to be paid to the plaintiff and $806.24 to the State Employees Retirement Fund. On this stipulation the Court entered judgment in favor of the plaintiff in the sum of $12,-653.43 without interest. The defendants appealed from this order, and the plaintiff appealed from the disallowance of interest.

We find no error in the action of the court below which would justify reversal in whole or in part of the order entered.

Under the decisions of this Court, a member of the Milk Control Commission is not a "public officer" under Section 13 of Article III of the Pennsylvania Constitution and is, therefore, not subject to the limitations in salary referred to therein. The functions performed by the Milk Control Commission, from a governmental point of view, are not unlike those devolving upon the Public Utility Commission. In 1925, when the latter commission was known as the Public Service Commission, this Court held that the Commission was in effect a committee created by the legislature "to do a certain part of its work." Further, that "public service commissions must be viewed as deputies of the General Assembly to perform legislative work." (*Com. ex rel. v. Benn,* 284 Pa. 421, 435.)

The prohibition (in Sec. 13, Art. III) with regard to compensation to public officers does not apply to members of the Legislature since their compensation is dealt with in a separate part of the Constitution, namely, Art. II, Sec. 8.

In *Hadley's Case,* 336 Pa. 100, 105, this Court declared: "The purpose of the framers of the Constitution in placing limitations upon legislative interference with the compensation received by a public officer for the duties normally incident to the office was to eliminate political or partisan pressure upon the in-

cumbents of office after they had been elected or appointed: 8 Deb. Pa. Const. 332, 333. It was not their intent to narrowly circumscribe the appointment of such officers as special agents for the Commonwealth."

The learned court below well restated this proposition and the issue in the case at bar, as follows: "The reason underlying Article III, Sec. 13, namely, to eliminate political or partisan pressure upon incumbents of office after they had been elected or appointed, does not apply to members of the Public Utility Commission, because the legislature has a much greater power over the commissioners than the power to change salaries could give it. The legislature has the power to abolish the commission entirely as indeed it did in 1937 when it abolished the Public Service Commission.

"The reasoning thus followed in holding that members of the Public Utility Commission were not within the scope of the term 'public officers', as used in Article III, Sec. 13, applies with equal force in considering the status of the members of the Milk Control Commission as such 'public officers'. An analysis of the pertinent provisions of the Milk Control Act (Act of April 28, 1937, P. L. 417, 31 PS 700j) and of the Public Utility Law (Act of March 31, 1937, P. L. 160, 66 PS 452), shows their complete similarity in the manner in which the Legislature created these agencies to handle its specific problems, and confirms the conclusion that a member of the Milk Control Commission, as a member of an independent administrative commission, is not a 'public officer' within the meaning of Article III, Sec. 13."

The fact that the Milk Control Commission is an agency of the Legislature does not mean that the Legislature has unconstitutionally delegated to it legislative power. In *Rohrer v. Milk Control Board*, 322 Pa. 257, this Court accepted the Dissenting Opinion of

President Judge KELLER of the Superior Court as correctly expressing the authoritative law on the subject: "A moment's consideration must convince an open mind of the impracticability of the General Assembly itself conducting the hearings and arriving at the conclusions necessary for fixing fair rates for producer, distributor, dealer and consumer in widely scattered and wholly dissimilar sections of the State. It has set forth . . . the basic purposes and primary standards which it has in mind. . . ; and having done so it may lawfully appoint the board its agent upon whom devolves the duty to carry out the legislative policy. It has not delegated its power to make law, but has delegated the power to determine facts and apply the intention of the legislature to conditions thus determined." (page 277)

"I can see no real distinction in this respect between the Public Service Company Law (Act of July 26, 1913, P. L. 1374) and the Milk Control Act now under review." (pages 277-278)

"I see no real, vital or substantial difference between the two acts as respects delegation of legislative powers." (page 279)

The court below properly allowed the plaintiff's claim for the increase in salary provided for by the General Assembly and also properly disallowed Snyder's claim for interest on the amount due him. It was not until after the parties were directed to prepare a suggested final decree as to the exact sums claimed by the plaintiff that the plaintiff introduced the subject of interest. It has been a rule of long standing that: "A complainant can be afforded such relief only as he is entitled to *under the allegations of the bill* . . . The order or decree of a court of chancery should conform *to the prayer in the bill* . . . Authorities need not be multiplied in support of the rule that the relief af-

forded by the decree must conform to the case *as made out by the pleadings,* and that it must be consistent with the relief prayed for." (Luther v. Luther, 216 Pa. 1, at page 9) (Emphasis supplied) And more recently in *Namy v. Black,* 367 Pa. 523, at page 526, this Court quoted from *Caveny v. Curtis,* 257 Pa. 575, 581, to the effect that "neither unproved allegations nor proof of matters not alleged can be made the basis for equitable relief." That rule being applicable here the plaintiff's much belated claim for damages is barred. It therefore is unnecessary to decide whether or not in a properly pleaded case the Commonwealth is liable to pay interest on obligations such as the one here involved.

Decree affirmed; each appellant to bear the cost of his appeal.