413 A.2d 1059

**Davida SACK, Appellant,**

**v.**

**Isabel FEINMAN, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 12, 1979.

Decided April 30, 1980.

154

Fred Lowenschuss, Philadelphia, for appellant.

Harry R. Kozart, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

This appeal arises out of a complaint in equity instituted in 1971 by Davida Sack, appellant, against her sister, Isabel Feinman, appellee. The complaint alleged that appellee had induced their mother to execute powers of attorney to enable appellee to control their mother's assets. It was further asserted that appellee fraudulently converted these assets prior to the mother's death by placing them in her own name. Specifically, it was contended that appellee, during January and April of 1970, through the use of the previously mentioned powers of attorney, converted savings bonds and certificates belonging to the mother and placed in trust for appellant to her own account. The chancellor found that the redemption of these bonds and certificates was not at the request or instruction of the mother and rejected the contention that the redemptions were intended by the mother to be a gift to appellee. Thereupon the chancellor found in appellant's favor and imposed a constructive trust in the amount of $25,000. Appellant appeals from the chancellor's refusal to award pre-verdict interest. The Superior Court affirmed without opinion and we granted allocatur.[1]

1. Appellee originally challenged the jurisdiction of the court in equity claiming that the matter should have been lodged in and resolved by the Orphans' Court Division. In a prior opinion, this Court rejected that contention and affirmed the jurisdiction of the court in equity. *Sack v. Feinman*, 445 Pa. 601, 284 A.2d 505 (1971). Appellee also appealed from the chancellor's decree to the Superior Court and

The facts underlying this action are clear cut. At the time of the adjudication by the court of common pleas in 1975, appellant was 49 years old, appellee was 59, and a third sister, Ruth Gland,[2] was 54 years old. Their father had died at an unspecified time prior to the death of their mother who died on November 10, 1970. Appellee, who has never married, had been living with the mother since at least 1960.

Beginning in 1967, the decedent began to purchase savings bonds in her name in trust for each of her daughters. These purchases were as follows:

(a) *January 5, 1967*: Girard Trust Bank, two 10 year, five percent savings bonds in the amount of $10,000 each, one in the name of decedent in trust for appellant and one in decedent's name in trust for appellee.

(b) *January 27, 1967*: First Pennsylvania Bank, three 10 year, five percent savings bonds in the amount of $10,000 each, held in decedent's name in trust for her daughters in the following amounts: appellant $10,-000, appellee $5,000, Ruth Gland $10,000.

(c) *February 1, 1967*: Girard Trust Bank, two 10 year, five percent savings bonds in the amount of $10,000 each, one held in decedent's name in trust for appellee, the other held in trust for Ruth Gland.

In a will executed by the decedent on November 15, 1967, she stated that she had made provisions for Ms. Gland and appellant to each receive $20,000 upon her death from assets from the probate estate:

> In making the foregoing provisions in this, my will, I have considered the needs of each of my daughters, ISA-BEL FEINMAN, RUTH C. GLAND and DAVIDA G. SACK, and I have been mindful of the fact that I have, in

sought allocatur from this Court. Allocatur Docket No. 3193 of 1977. Appellee's request for allocatur was denied on December 18, 1977.

2. Ms. Gland has filed her own action against the present appellee, making the same averments and seeking the same relief as the present appellant sought below. Ms. Gland was not a party to the present case below and is not a party to this appeal.

my lifetime, made certain provisions for my daughters, RUTH C. GLAND and DAVIDA G. SACK, so that upon my death, each of said daughters, RUTH and DAVIDA, will receive approximately Twenty Thousand ($20,000.00) Dollars, from certain of my assets that will not be a part of my probate estate. I am confident that my daughters, RUTH C. GLAND and DAVIDA G. SACK, as well as my daughter ISABEL FEINMAN, will always know that while I have made greater provision for the financial security of my daughter, ISABEL FEINMAN my love for all of them has always been equal.

Shortly prior to the execution of this will, decedent was hospitalized and executed powers of attorney with various banks empowering appellee to conduct financial transactions on decedent's behalf.

On July 10, 1968, decedent purchased 14 year, five percent savings bonds from Philadelphia National Bank in her name in trust for her three daughters in equal $5,000 amounts. Decedent amended her will in October of 1969 to reflect this increased gift of non-probate assets. On July 30, 1970, decedent purchased three five and three-quarters percent savings certificates from Western Savings Bank in her name in trust for each of her daughters in equal $10,000 amounts. The chancellor found that it was decedent's intention to give appellant and Ms. Gland separate trusts of $35,000 from non-probate assets.

Upon the decedent's death in November 1970, appellant and Ms. Gland received only the $10,000 savings certificates from Western Savings Bank. This was because, beginning on January 26, 1970, appellee began to redeem all of the savings bonds purchased by decedent in trust for her daughters. Using the powers of attorney executed by her mother in appellee's favor, appellee redeemed these bonds in her mother's name, deposited the funds in a joint account she shared with her mother, and then deposited the funds in her sole account. The chancellor found that the redemption of these bonds was not at the request or instruction of the mother. In rejecting appellee's claim that the redemptions

were intended by the decedent to be a gift to appellee, the chancellor found that a confidential relationship existed between appellee and her mother and that this relationship was abused by appellee to her sole benefit. Consequently, a constructive trust in the amount of $25,000 was imposed for the benefit of appellant. Following this adjudication, appellant filed with the court a petition to amend the decree nisi praying that interest from the date of her mother's death be included in the award. By order of August 13, 1975, the chancellor ruled that this petition was to be treated as an exception to the decree nisi. On July 6, 1976, the chancellor denied appellant's request for interest and the court *en banc* affirmed him on September 21, 1976.

Appellee contends that the issue of interest has been waived by appellant's failure to file exceptions to the chancellor's supplemental adjudication and decree nisi, as required by Pa.Civil Procedure Rule 1518.[3] We disagree. It is clear from the record that appellant's Petition to Amend Decree Nisi was intended to be an exception to the chancellor's original adjudication. Furthermore, the chancellor by order expressly termed it an exception and it was so treated and considered by the chancellor and the court *en banc.* The chancellor correctly refused to permit faulty nomenclature to obscure the true nature of the pleading. The chancellor was given formal notice by appellant that she did not acquiesce in his adjudication and he was given the opportunity to review the propriety of appellant's claimed right to pre-verdict interest. In these circumstances, Rule 1518 was complied with. *See, Turnway Corp. v. Soffer,* 461 Pa. 447,

3. At the time of the adjudication, Rule 1518 stated:

Rule 1518. Exceptions

Within twenty (20) days after notice of the filing of the adjudication, exceptions may be filed by any party to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, to the decree nisi or in cases where requests for findings of fact or conclusions of law have been submitted by leave of court to a failure or refusal to find any matter of fact or law substantially as requested. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived, unless, prior to final decree, leave is granted to file exceptions raising these matters.

455–56, 336 A.2d 871 (1975). Neither Rule 1518 nor our case law have imposed upon an excepting party the duty to file further exceptions to a supplemental decree responding to the exceptions already filed. First, the rule itself speaks only of the necessity of filing exceptions "to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, to the decree nisi [and] . . . to a failure or refusal to find any matter of fact or law." Nowhere is it made necessary to file exceptions to protect the failure of the chancellor to accede to the originally filed exceptions. Second, the two cases cited by appellee do not support her position. In *Logan v. Cherrie*, 444 Pa. 555, 556, 282 A.2d 236, 236 (1971), we ruled that the moving party's claims were waived because of the failure "to file *any* exception or exceptions to the decree in the court below." (Emphasis in the original.) And in *McGrorey Estate*, 474 Pa. 402, 378 A.2d 855 (1977), the appellant had also failed to comply with Rule 1518 by not filing any exceptions in the court below. In the present case appellant has timely filed exceptions and was not under further duty of excepting to the chancellor's response to her original exceptions.

Appellee also contends that the prayer for relief in appellant's complaint does not set forth a claim for pre-verdict interest and hence, appellant is not entitled to such interest.[4] Again, we disagree. The prayer for relief states in full:

Wherefore, plaintiff respectfully prays:

(a) That an injunction issue, preliminary until final hearing and perpetual thereafter, enjoining the defendant from transferring, conveying, encumbering or any other way obligating funds or investments or any other assets held by her as having belonged to Sara G. Feinman;

4. Appellee urges us to read *Snyder v. Barber*, 378 Pa. 377, 106 A.2d 410 (1957), as being dispositive of this claim. In *Snyder*, the Court denied the plaintiff pre-verdict interest because he had entered into a stipulation of the amount due him, and such stipulation did not include interest. *See* 378 Pa. at 379–80, 106 A.2d 410. *Snyder* does not alter the general equitable principles discussed in the text.

(b) That the defendant be ordered to disclose at said preliminary injunction hearing such assets as she transferred by Power of Attorney of Sara G. Feinman or had Sara G. Feinman transfer out of her name since December 15, 1966;

(c) That the said assets as referred to hereinabove be kept intact and be turned over to a Receiver or Trustee as directed by this Court to hold the funds in status quo until final trial is held as to the issue of the ownership of said assets;

(d) That at such time as defendant's fraudulent conduct has been shown, that the assets then be distributed in accordance with the laws of distribution of the Commonwealth of Pennsylvania to the children of the said decedent, Sara G. Feinman;

(e) Such other relief as to your Honorable Court shall seem necessary and proper.

This Court has "long recognized the power of a Chancellor to shape and render a decree which accords with the equities in the case when, as here, the complainant includes a prayer for general relief." *Salisbury Township v. Vito,* 446 Pa. 200, 204, 285 A.2d 529, 531 (1971), citing *Christian v. Johnstown Police Pension Fund Ass'n,* 421 Pa. 240, 246, 218 A.2d 746 (1966). Where "[e]quity had proper jurisdiction in th[e] matter [it] may, under the prayer for general relief, validly frame any proper relief agreeable to the case pleaded and proven." *Sigal v. Manufacturers Light & Heat Co.,* 450 Pa. 228, 231, 299 A.2d 646, 647 (1973), discussing many cases. In *Meth v. Meth,* 360 Pa. 623, 62 A.2d 848 (1949), for example, this Court affirmed the award of money damages and interest from the date the bill was filed in a case where the plaintiff sought specific relief but had included a general prayer for relief as well. Accordingly, the prayer for general relief in appellant's complaint provides a proper foundation for a claim to pre-verdict interest.

■ Proceeding to the merits of appellant's claimed right to pre-verdict interest, appellee and the chancellor expressed the view that such interest is barred by the Act of April 6,

1859, P.L. 381, § 1, 12 P.S. § 781 (1953), repealed and recodified in substantially similar form at 42 Pa.C.S.A. § 8101 (1979 Pamphlet). This statute states:

§ 781. Interest upon verdict

From and after the passage of this act it shall be lawful for any party or parties, in whose favor any verdict may be rendered for a specific sum of money, to collect and receive interest upon such sum from the date of the verdict; and every general judgment entered upon such verdict, whether by a court of original jurisdiction, or by the Supreme Court, shall be deemed and held to be a judgment for the sum found by the verdict, with interest thereon from the date of such finding: Provided, That nothing in this act contained shall prevent any court from directing special verdicts, or entering special judgments whenever the same shall be deemed just and proper.

The chancellor interpreted this statute as follows:

The wording of this statute is clear. Interest does not run from the date of the *wrong*, but runs instead from the date of the *verdict*. Plaintiff here asks for interest from the date of the misappropriation of these funds; as is plainly provided by the Act, absent a "special verdict" of this Court, such interest is not contemplated in the law of Pennsylvania. We shall refuse to enter a special verdict and will simply leave plaintiff to her normal statutory remedies of collecting interest on this verdict when, in the event that the decree nisi of the chancellor becomes a confirmed final decree, plaintiff reduces same to a monetary judgment. Finally, even in the event that a Court would hold that interest must flow from the date of the wrong rather than from the date of verdict, absent a "special verdict" of the chancellor in this case, we would enter a *special verdict* in such circumstances limiting interest to that running from the date of the verdict itself. [Emphasis in the original.]

We do not believe that this statute bars an award of pre-verdict interest in appropriate cases. First, the plain words of the act do not speak of pre-verdict interest and do

not expressly bar such interest. Second, after the passage of this act, this Court has on occasion allowed awards of pre-verdict interest. Pre-verdict interest was permitted in *Fidelity-Philadelphia Trust Co. v. Simpson*, 293 Pa. 577, 587, 143 A. 202, 205 (1928), a stock fraud case, because "[a]s defendant had the benefit of his fraud from the date of its commission, there is no injustice in requiring him, as the court in banc did, to pay damages for delay equal to what would be simple interest." In another case involving conversion of shares of stock, this Court wrote at length as to the propriety in awarding pre-verdict interest:

The rise in market value at the time when plaintiff actually replaced the stock, or could have done so in accordance with the requirements of the above stated rule, must be assumed to represent all the advantages which would have accrued to him had the stock not been wrongfully sold, but, in addition to the principal damages thus measured, to do exact justice, he should also have compensation for delay; and, in a case like the present, this would consist of interest on the principal damage from the reacquirement-of-stock date to the date of the verdict. That the inclusion in the verdict of such interest, as compensation for delay, is but equitable is well illustrated by assuming a case where a broker wrongfully sold his customer's stock and the customer after going through all the required preliminaries, immediately repurchased a like amount of the same stock at an advanced price, and sued the broker to recover the difference in value which he was obliged to pay. Assuming further that plaintiff's case was not tried for two or more years after the reacquirement-of-stock date, it can be plainly seen that, while plaintiff had the same advantages of his reacquired stock during this interval as he would have had had it never been wrongfully converted, yet, during the same period, he would lose the advantage of the additional capital which he was obliged to pay out to remedy the broker's wrong—namely, the rise in the market value between the day of the conversion and the time the stock was again

purchased,—and hence that he would be entitled to interest on that capital during the period in question.

*Gervis v. Kay,* 294 Pa. 518, 526, 144 A. 529, 531 (1928). This Court also has allowed such interest in eminent domain cases, *see e. g., Whitcomb v. Philadelphia,* 264 Pa. 277, 284, 107 A. 765 (1919); and in cases involving an accounting, *see e. g., Nick v. Craig,* 298 Pa. 411, 415, 148 A. 709 (1930).

The treatise writers are in accord that "the better view seems to be that interest upon liquidated damages will be allowed from the time of the accrual of the claim for liquidated damages." C. McCormick, Damages 217 (1935). Professor Dan Dobbs has set forth cogent reasons for permitting a plaintiff to recover pre-verdict interest in cases, like the present one, in which a fiduciary breaches her duty:

. . . In the first place, it seems clear that if the fiduciary must account for profits he has gained by the use of the plaintiff's money, he must likewise account for interest he gained by its use. There would hardly be any purpose in holding the fiduciary liable for profits he gains on sales of stock purchased with his beneficiaries' funds, without also holding him liable for interest he earned by investment of his beneficiaries' funds. Hence, wherever the fiduciary's profits could be reached by the beneficiary, interest on the funds wrongly held by the fiduciary could be awarded as an alternative.

In the second place, the principle in such cases is the prevention of unjust enrichment. If the fiduciary makes profits, or gets interest on the money he wrongly takes from the beneficiary, he must be held liable not only for the profits or interest he makes on such funds, but also for interest on those profits or the interest itself. In no other way can his enrichment be taken from him. Hence, any claim based upon unjust enrichment or restitution, rather than upon compensation or damages, not only permits pre-judgment interest, but also permits an award of compound interest.

Because all of this was most obvious in fiduciary cases, and because those cases were decided in equity courts, the

generalization often made was that *interest would be permitted in equity, as a matter of the chancellor's discretion,* even where not permitted at law because the claim was unliquidated. The principle behind this, however, is clearly broader than the scope of purely equitable actions: it is a principle based upon unjust enrichment notions. For that reason it should be stated, not as a rule about equity, but as a rule about restitution. Whenever the defendant holds money or property that belongs in good conscience to the plaintiff, and the objective of the court is to force disgorgement of his unjust enrichment, interest upon the funds or property so held may be necessary to force complete restitution. This may be true in law as well as in equity.

D. Dobbs, Remedies 169–70 (1973) (footnotes omitted). Furthermore, both the Restatement of Restitution §§ 156 & 157 (1937)[5] and the Restatement (Second) of Trusts § 207 (1959),[6] provide for awards of pre-verdict interest in order to make the plaintiff whole again.

5. § 156. Interest.
 Subject to the rules stated in § 157, a person who has a duty to pay the value of a benefit which he has received, is also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution if, and only if:
 (a) the benefit consisted of a definite sum of money, or
 (b) the value of the benefit can be ascertained by mathematical calculation from the terms of an agreement between the parties or by established market prices, or
 (c) payment of interest is required to avoid injustice.
 § 157. Restitution of Direct Product and Compensation For Use.
 (1) A person under a duty to another to make restitution of property received by him or of its value is under a duty
 (a) to account for the direct product of the subject matter received while in his possession, and
 (b) to pay such additional amount as compensation for the use of the subject matter as will be just to both parties in view of the fault, if any, of either or both of them.
 (2) The rule stated in Subsection (1) is applicable to an action brought solely to recover the income or value of the use of the subject matter, or interest upon the amount of its value.

6. § 207. Liability for Interest.
 (1) Where the trustee commits a breach of trust and thereby incurs a liability for a certain amount of money with interest thereon, he is chargeable with interest at the legal rate or such other rate as

██ This weight of authority compels the conclusion that the Act of April 6, 1859 does not bar an award of pre-verdict interest in order to prevent unjust enrichment or where the payment of interest is required to avoid injustice. These authorities are also in agreement that the decision whether to award interest and the amount of such interest, is vested in the discretion of the chancellor. This is especially true in cases, like the present one, in which the plaintiff's claim for interest is contained in her prayer for general relief and is therefore dependent upon the "long recognized power of a Chancellor to shape and render a decree which accords with the equities in the case." *Salisbury Township v. Vito,* 446 Pa. at 204, 285 A.2d 531.[7]

In denying the petition to amend the decree nisi, the chancellor stated that even if he had the authority to award pre-verdict interest, he would not do so in the present case, and would instead limit the interest to that accruing after the decree had been entered.

██ Normally, appellate review of equity matters is limited to a determination of whether the chancellor com-

the court in its sound discretion may determine, but in any event he is chargeable with interest actually received by him or which he should have received.

(2) Where the trustee is chargeable with interest, he is chargeable with simple and not compound interest, unless

(a) he has received compound interest, or

(b) he has received a profit which cannot be ascertained but is presumably at least equal to compound interest, or

(c) it was his duty to accumulate the income.

7. The *dicta* relied upon by appellant in *Emerson v. Schoonmaker,* 135 Pa. 437, 440 19 A. 1025 (1890), does not apply to the present case. *Emerson* was a case at law unlike the present case in equity, and was tried before a jury. Moreover, appellant's more modern cases support the position we take today. In *Nick v. Craig,* 298 Pa. 411, 415, 148 A. 709 (1930), the award of interest by the equity court was due solely to the Court's conclusion that "under the circumstances of this case" interest should have been awarded. In *Gervis v. Kay,* 294 Pa. 518, 526, 144 A. 529 (1928), the Court recognized that the decisions to include interest is one grounded in equitable considerations. Lastly, in *Fidelity-Philadelphia Trust Co. v. Simpson,* 293 Pa. 577, 587, 143 A. 202 (1928), the issue presented to this Court was whether the decision of the chancellor to award interest worked an "injustice."

mitted an error of law or abused his discretion. *Commonwealth Dept. of Environmental Resources v. Pa. Power Co.*, 461 Pa. 675, 337 A.2d 823 (1975). The scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Delp v. Borough of Harrisville*, 25 Pa.Cmwlth. 486, 360 A.2d 758 (1976). Although appellant is not entitled to pre-verdict interest as a matter of right, she is entitled to know the reasons underlying the chancellor's refusal to award such interest as a matter within his sound discretion. Pa.R.C.P. No. 1517(a) requires a chancellor to make specific findings of all facts necessary to determine the issues in the case and to support the decree and where such findings are general or absent, the cause must be remanded to the chancellor for the required findings. *Thompson v. Thompson*, 451 Pa. 546, 301 A.2d 644 (1973); *Community Sports, Inc. v. Oakland Oaks*, 429 Pa. 412, 240 A.2d 491 (1968). Here, the chancellor has not stated his reasons for denying appellant pre-verdict interest as a matter of his discretion. Nor has he made any findings of fact or conclusions of law relevant to a determination of the propriety of disallowing such interest as a matter of discretion. Consequently, appellant and this Court are left without any basis for determining whether the chancellor's denial of pre-verdict interest was supported by the evidence or was demonstrably capricious. Accordingly, we remand this case to the chancellor for the purpose of enabling him to make specific findings pursuant to Rule 1517 regarding his decision not to exercise his discretion to allow pre-verdict interest in this case. We will retain jurisdiction to review these findings once they are made.

Case remanded with instructions. Each party to pay own costs.

MANDERINO, J., did not participate in the consideration or decision of this case.