633 A.2d 655

Andrew HUNTER and Nancy Hunter, His Wife,
George Royle, IV and Barbara H. Royle,
His Wife, and Marjorie C. Wenning

v.

John BOWMAN, Charles Heidman, and Charles Depue,
Individually and as Supervisors of the Township of
Paradise and the Township of Paradise, Appellants.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1993.

Decided Oct. 20, 1993.

Reargument Denied Dec. 15, 1993.

Mark P. Pazuhanich, for appellants.

Jonathan Mark, for appellees.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

John Bowman, Charles Heidman and Charles DePue, individually and as Supervisors of Paradise Township and Paradise Township (collectively, Township) appeal from an order of the Court of Common Pleas of Monroe County (common pleas court) that enjoined the Township from cutting trees alongside Hulbert Hill Road and Hunter Farm Road (subject roads),[1] widening subject roads or otherwise changing the status quo until the center lines of the subject roads are established, at the request of Andy and Nancy Hunter, George and Barbara Royle and Marjorie Wenning (collectively, Landowners). We reverse.

This controversy arose when the Supervisors determined that the subject roads needed improvement and initiated a plan to cut approximately one hundred trees as a beginning step. The trees are mature and range in size from a diameter of four inches to two feet. Approximately ninety-five of the trees are within fifteen feet of the center of the subject roads in their present location. The Township can cut the trees at a favorable rate for a limited time.

Landowners protested the removal of the trees and on January 29, 1992, they filed a complaint in equity requesting that the common pleas judge, in the role of Chancellor (Chancellor), issue a preliminary injunction. The same day, the Chancellor preliminarily enjoined the Township from cutting any of the trees or widening or otherwise changing the status

---

1. Within the Township, Hunter Farm Road is approximately 1.3 miles long and Hulbert Hill Road is approximately .8 of a mile long.

quo of the subject roads. On February 4, 1992, and February 11, 1992, the Chancellor held hearings on whether to enter a permanent injunction and the Landowners and the Township presented testimony as well as other evidence.

Following the hearings the Chancellor found that there was no official record establishing that the subject roads had been recorded or dedicated to the Township but that the Township commenced work on the subject roads in 1972, which included widening and installing drainage pipes. The subject roads were essentially dirt and shale until resurfaced by the Township in 1975. They currently measure seventeen and one-half feet to eighteen in width and are traversed by an average of sixty-eight to seventy-two vehicles a day.

The Chancellor also found that the center lines for the subject roads have never been established and that the actual center lines have shifted with each work project. Having determined that the Township was unable to establish center lines, the Chancellor enjoined the Township from cutting any trees, widening the roads or otherwise changing the status quo until such time as the center lines for the subject roads are established and accepted by the court. The Township appeals.

On appeal the Township contends that the Chancellor erred in issuing the injunction because the subject roads are Township roads by operation of statute and are thus deemed to have a legal width of thirty-three feet and that Landowners have failed to establish a clear right to the area in question. The Township alternatively contends that if the injunction was properly granted, it should have been limited to the property actually owned by Landowners. Appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. *Sack v. Feinman,* 489 Pa. 152, 165–66, 413 A.2d 1059, 1066 (1980). Our scope of review of a final decree in equity is limited and will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Id.* Further, issues of credibility and evidentiary weight are within the

exclusive province of the chancellor. *Feeley v. Borough of Ridley Park*, 121 Pa. Commonwealth Ct. 564, 551 A.2d 373 (1988).

■ The Township's first contention is that it acquired ownership of the subject roads through statutory prescription by maintaining them for a period upwards of twenty-one years and that the Chancellor erred in finding to the contrary. We agree. Section 1105 of the Second Class Township Code provides:

> Every road not of record which has been used for public travel and maintained and kept in repair by the expenditure of township funds for a period of at least twenty-one years and upwards shall be deemed to be a public road of the width of thirty-three feet notwithstanding the fact that there is no public record of the laying out of such road or a dedication thereof for public use. In all such cases the lawful laying out and opening or dedication of such roads of the width hereinbefore specified shall be conclusively presumed.[2]

In Paragraph 8 of Landowners' equity complaint, filed in the trial court on January 29, 1992, Landowners allege:

> Located within the Township of Paradise are two township roads known as Hunter Farm Road and Hulbert Hill Road. Plaintiffs believe and, therefore, aver that these roads were used as public thoroughfares as early as sometime in the 19th Century and that until approximately 1955, they were nothing but dirt roads. *Sometime in the late 1950's, the Township began applying an oil and chip surface to the roads.* Plaintiffs further believe and, therefore, aver that the precise centerline of the roads has never been established by appropriate proceedings and, in fact, the roads have "moved" over the years (emphasis added).

Certified Record (C.R.), Complaint in Equity for Injunctive Relief at 2. On cross-examination Landowner George Royle

---

2. Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 66105. We note that the Township is a second class township governed by the provisions of the Second Class Township Code.

IV substantiated the allegations set forth in Paragraph 8 by testifying that since the 1950's the subject roads have been maintained by the Township at its expense. Notes of Testimony (N.T.), February 11, 1992, at 66–67; Reproduced Record (R.R.) at 68a–69a. In *Riddle v. Department of Transportation*, 136 Pa. Commonwealth Ct. 508, 583 A.2d 865 (1990), we noted that admissions in pleadings constitute judicial admissions which cannot later be contradicted by the party who has made them. *Id.* at 513, 583 A.2d at 867. Consequently, Landowners' uncontradicted admission in Paragraph 8 of their complaint, that the Township has maintained the subject roads since the 1950's, is binding.

Relying on Section 1105, the Township contends that the legal width of the subject roads is thirty-three feet regardless of what portion of the roads are actually being used for travel. However, the Chancellor found in F.F. Nos. 16 and 17 that the center lines of the subject roads have never been established by the Township because the actual center lines of the roads have changed with each work project. In *Hancock v. Borough of Wyoming*, 148 Pa. 635, 24 A. 88 (1892), our state Supreme Court established the doctrine that once a public highway has been laid out upon the ground and used by the public its location cannot be changed, except by proceedings under the road laws. *Id.* at 638, 24 A. 88. This remains so even if the present boundaries are not precisely where the road was originally laid out. *Id. See also Gray v. North Versailles Township*, 208 Pa. 77, 57 A. 190 (1904) (the opening of a road on the ground fixed its location even if it was not where it was originally intended to be).

In the present case, the Chancellor found that the Township's work projects in 1972 and 1975 altered the center lines of the subject roads. But, Landowners never objected to any movement of the subject roads or center lines and they continued to be used by the public. Further, Landowners did not attempt to establish that the center lines of the subject roads were different than those as marked by the Township.[3]

3. Robert Safin, the Township's road crew foreman, testified that he marked the center lines of the paved portion of the subject roads with

Section 1175 of the Second Class Township Code, 53 P.S. § 66175 provides:

**Saving trees and shrubbery**

Where any road of any township passes through or along forested lands, wild lands, or uncultivated lands, no trees growing within the limits of such road at a distance beyond fifteen feet on either side of the center line thereof, and which measure four inches or over in diameter at a point two feet from the surface of the ground, shall be cut down or destroyed by the supervisors or roadmasters employed by them, or any other person, without first obtaining the consent of the abutting owners.

Whenever any road running through improved or cultivated lands has been opened, and there are growing, along the roadsides and within the road limits, shrubs or trees not in the opinion of the supervisors interfering with public travel, no supervisors or roadmasters, or other persons in their employ, shall remove, cut, injure, or destroy, or in any other manner interfere with such shrubs or trees. If such removal or cutting is deemed necessary for the purpose of maintaining the road, the supervisors or roadmasters, or other persons in their employ, may cut or remove such shrubs or trees, after notifying the property owners of the contemplated removal, cutting of said shrubs or trees.

Pursuant to Section 1175, the Township may cut the trees in question which undisputedly lie within fifteen feet of the center line of the paved portions of the subject roads.

Having determined that the Chancellor erred in finding that the Township did not establish either ownership of the subject roads pursuant to Section 1105 of Second Class Township Code or the location of their respective center lines, we reverse order of the common pleas court and dissolve the permanent injunction.

red paint and then determined the distance from the center lines to each of the approximately one hundred trees in question. All but approximately four to six are within fifteen feet of the center lines. N.T., February 11, 1992, at 121-23; R.R. at 123a-125a.

## *ORDER*

AND NOW, this 20th day of October, 1993, the order of the Court of Common Pleas of Monroe County in the above-captioned matter is reversed and the permanent injunction prohibiting Paradise Township from cutting trees along Hunter Farm Road and Hulbert Hill Road, or widening or otherwise altering the status quo of said roads, is hereby dissolved.