# Fulton v. Gavlick

*John J. Speicher,* for plaintiff Fulton.
*Barbara H. Beringer,* for plaintiffs Steffy and Moody.
*Jean Gilroy Gavlick,* pro se.

FEUDALE, *S.J.,* June 17, 2003—In January of 1998, plaintiffs Candice Steffy and Geri Moody retained Jean Gilroy Gavlick, Esquire, and the firm of Gavlick & Rowe P.C. to assist them in the administration of the estate of their deceased mother, Doris M. Killian, who had died one month earlier. In January of 2000, plaintiff George Fulton retained Attorney Gavlick to assist him in the administration of the estate of his deceased mother, Jacqueline M. Fulton. Plaintiff Patricia Rittenhouse likewise retained Attorney Gavlick to assist her when her mother, Dorthea Brown, died in July of 2000. Alfred Laverick hired Attorney Gavlick to assist him with his personal affairs and his deceased wife Mary's estate. After gathering the assets from the various estates, what transpired was not professional representation, but an elaborate shell game whereby Attorney Gavlick transferred monies out of these estates into her own pocket and then from one estate to another, "robbing Peter to pay Paul,"

to keep her scheme from being discovered. Despite her best efforts, she has been discovered, disbarred and disgraced.

## I. PROCEDURAL HISTORY

On July 30, 2001, plaintiff George Fulton commenced this lawsuit against defendants Jean Gilroy Gavlick and Gavlick & Rowe P.C., by writ of summons. On September 19, 2001, plaintiff Alfred Laverick likewise commenced suit. On November 2, 2001, this case was assigned to the Honorable Peter W. Schmehl, along with the Rittenhouse suit, docket no. 01-8544; the Laverick suit, no. 01-9427 and the Steffey and Moody suit, no. 01-10546. The complaint was filed by plaintiff Fulton on November 7, 2001. On December 6, 2002, plaintiff Fulton filed an amended complaint for breach of fiduciary duty—contract, fraud, breach of contract, conversion, negligence and respondeat superior, with requests for punitive damages. On December 12, 2001, plaintiffs Fulton, Rittenhouse, Laverick, Steffey and Moody moved the court for consolidation of these matters, which the court granted on January 17, 2002. On January 31, 2002, the defendant Gavlick filed an answer with new matter. On February 1, 2002, all of the judges on the Berks County bench recused themselves and all proceedings were stayed pending reassignment of the case; on February 28, 2002, the matter was reassigned to the undersigned. On May 6, 2002, plaintiffs Steffey and Moody filed their complaint for breach of fiduciary duty—contract, fraud, breach of contract, conversion, negligence and respondeat superior, with requests for punitive damages. On June 10, 2002, a judgment was entered in favor

of plaintiff Alfred A. Laverick by stipulation. A pretrial conference was scheduled for July 26, 2002. By pretrial order of August 12, 2002, the jury trial was scheduled for September 30, 2002, in order to give the defendant more time to make restitution to the plaintiffs. The trial date was continued to November 7, 2002. On October 18, 2002, defendant Gavlick entered guilty pleas to eight counts of theft in the three related criminal cases. Plaintiffs Fulton, Moody and Steffey filed requests to amend their complaints to include counts under the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§201-2 through 201-9.2, to which both defendants filed preliminary objections. Said objections were sustained on October 22, 2002. On November 7, 2002, the court approved settlement agreements entered into by the three remaining plaintiffs and Gavlick & Rowe P.C. Gavlick & Rowe P.C. was thereafter discontinued as a party defendant. Plaintiffs reserved the right to pursue their claims against the defendant. By agreement of the parties, a bench trial was scheduled at a later date to permit discovery re: Gavlick's assets. On December 16, 2002, counsel for defendant, Jeffrey McCarron, Esquire, petitioned the court to withdraw as counsel for the defendant; said petition was granted and the trial was continued to permit the defendant time to obtain new counsel. Plaintiff Rittenhouse withdrew her action against the defendant by praecipe. The bench trial was ultimately held on March 28, 2003; the defendant proceeded pro se. Defendant was given 30 days to file proposed findings of fact, conclusions of law and a brief in response to plaintiffs' filing of the same. On April 24, 2003, defendant petitioned the court for additional hearing and opportunity to submit additional documents. On May 8, 2003, the court denied

defendant's request for additional hearing, but granted the request to submit limited additional documentation and gave Gavlick 20 days in which to do so. As of this date, no additional documentation has been filed.

## II. FINDINGS OF FACT

(1) Plaintiff, George Fulton, is the executor of the estate of Jacqueline M. Fulton, deceased, and resides at the premises known as 311 West Green Lane, Reading, Berks County, Pennsylvania.

(2) Plaintiffs, Candice E. Steffey, of R.D. 5, Box 5636, Mohnton, PA, and Geri D. Moody of P.O. Box 422, Robbinsville, North Carolina, are executrices of the estate of Doris M. Killian, deceased.

(3) Defendant, Jean Gilroy Gavlick, is an adult individual who is presently incarcerated in the Penn Pavilion, New Brighton, Pennsylvania, pursuant to a sentence imposed on her by this honorable court on October 18, 2002.

(4) In addition to the claims that plaintiffs are asserting against defendant Jean Gilroy Gavlick, plaintiffs had also filed claims against Gavlick & Rowe P.C., the law firm at which Jean Gilroy Gavlick was a partner during the time she represented them.

(5) Plaintiffs have resolved their claims against Gavlick & Rowe P.C., pursuant to terms of settlement petitions that were approved by an order of this court on November 7, 2002.

(6) Plaintiff Fulton received total proceeds through his settlement with Gavlick & Rowe P.C. and restitution of Jean Gilroy Gavlick in the amount of $211,906.51. Res-

titution by Ms. Gavlick equals $93,500, $85,000 of which was paid in September of 2001, and $8,500 of which was paid in November of 2002.

(7) Plaintiffs settled with Gavlick & Rowe P.C., but specifically preserved all claims arising out of the intentional and criminal conduct of Jean Gilroy Gavlick.

(8) In January of 2000, plaintiff Fulton retained the law firm of Gavlick & Rowe P.C. to assist him in the administration of the estate of his deceased mother, Jacqueline M. Fulton.

(9) Jean Gilroy Gavlick was the lead counsel in representing plaintiff Fulton and she entered into a fee agreement with plaintiff on January 7, 2000, and represented him through and including August 30, 2001. (Plaintiff Fulton's exhibit 1, notes of testimony, 10/18/02, p. 9.)

(10) Assets of the estate included the residence of Jacqueline M. Fulton at 611 Lamberton Drive, Wheaton, Maryland, together with various stocks and bonds.

(11) On or about December 22, 2000, the home of Jacqueline M. Fulton was sold and the net proceeds from the sale were sent to plaintiff Fulton.

(12) At the instruction of defendant Gavlick, plaintiff Fulton endorsed the settlement check over to Attorney Gavlick and instructed a paralegal at Gavlick & Rowe P.C. to deposit the settlement proceeds into the estate escrow account.

(13) As part of being retained by plaintiff Fulton, defendant Gavlick came into possession of $197,789.28. (Plaintiff's exhibit 1, p. 9.)

(14) Defendant Gavlick used the money to her benefit rather than to the benefit of the Fulton estate. (*Id.*)

(15) On August 22, 2001, defendant Gavlick entered into a stipulation with plaintiff Fulton, agreeing to repay the estate by September 13, 2001; said stipulation was approved by the Honorable Peter W. Schmehl by order of court on August 23, 2001.

(16) By October 18, 2002, defendant Gavlick only returned $85,079.61 to the Fulton estate. (*Id.*)

(17) Defendant Gavlick failed to return $112,436.61 to the estate as requested and as required by her legal obligation. (*Id.*)

(18) On or about January 1, 1998 through August 30, 2001, defendant Gavlick was retained by plaintiff Laverick to handle the Laverick estate. (Plaintiff's exhibit 1, at p. 10.)

(19) Defendant Gavlick received $50,000 from the Laverick estate. (*Id.* at p. 10.)

(20) Defendant Gavlick used this money to her benefit rather than to the benefit of the Laverick estate; she also failed to turn this money over to the estate. (*Id.* at p. 11.)

(21) Between January 1, 1998 through and including August 30, 2001, defendant was retained by Patricia Rittenhouse to handle the Dorthea Brown estate.

(22) Defendant Gavlick received $70,000 from the Brown estate. (Plaintiff's exhibit 1, p. 11.)

(23) Defendant Gavlick used this money to her benefit rather than to the benefit of the Brown estate; she also failed to turn this money over to the estate. (*Id.*)

(24) From January 1, 1998 through August 30, 2001, defendant Gavlick was retained by plaintiffs Steffey and Moody to handle the Killian estate. (*Id.* at p. 13.)

(25) As part of being retained by plaintiffs Steffey and Moody, defendant Gavlick came into possession of $410,125.43. (Plaintiffs' exhibit 3, p. 2.)

(26) Defendant Gavlick paid plaintiffs Steffey and Moody $317,270 from the funds she received from the estate. (*Id.* at p. 3.)

(27) Defendant also entered into stipulations with plaintiffs Steffey and Moody for return of the remaining assets to the estate of Doris M. Killian by January 30, 2002. (Plaintiffs' exhibit 3.)

(28) Defendant Gavlick received $77,740.03 from the Killian estate. (Plaintiffs' exhibit 1, p. 13.)

(29) Defendant Gavlick used this money to her benefit rather than to the benefit of the Killian estate; she also failed to return this money to the estate. (Plaintiffs' exhibit 1, p. 13.)

(30) Defendant Gavlick was criminally charged with, inter alia, theft by failure to make required disposition of funds relating to these four estates, Fulton, Brown, Laverick and Killian, as well as several others.

(31) Civil actions for money damages involving these four estates were filed, and consolidated for trial.

(32) Defendant Gavlick pled guilty to the theft charges revolving around her conduct in the administration of the Fulton, Brown, Laverick and Killian estates. (Plaintiffs' exhibit 1.)

(33) Defendant Gavlick stole large sums of money from her clients and used this money for her own benefit, for the purchase of, inter alia, furs, jewelry, artwork and furniture.

(34) Defendant Gavlick then stole large sums of money from other clients, particularly plaintiff Fulton, to repay

some of the assets she took to keep her criminal actions from being discovered. (Plaintiffs' exhibit 2, pp. 56-57.)

(35) Defendant Gavlick's conduct was a factual cause of the harm suffered by plaintiffs Fulton and Steffey and Moody.

(36) Defendant Gavlick claimed she used these assets to pay extraordinary medical expenses for her son's medical prescriptions, between 1995 and 2001, in a total amount of $250,000 and that none of these were covered by any health insurance. (Plaintiffs' exhibit 2, pp. 12-13, 15-16.)

(37) When asked to account for the $400,000 plus stolen from the estates, defendant Gavlick claimed it was used to pay her son's prescription expenses. (*Id.* at p. 82.)

(38) Defendant, despite claiming she paid approximately $3,000 per month for prescriptions over several years, could not remember the name of the drug company nor could she substantiate her claims because she paid by money order or cashier's check and the company has gone out of business. (*Id.* at pp. 101, 103, 105.)

(39) Defendant Gavlick claimed Capital Blue Cross, which provided medical insurance coverage through her husband's job at Bank of Pennsylvania, denied the claims for her son's prescriptions. (*Id.* at p. 105.)

(40) Defendant Gavlick did not take a deduction for these medical expenses on her tax returns. (*Id.* at p. 104.)

(41) Defendant Gavlick's testimony is not credible; she did not use the stolen funds to pay for medical expenses for her son.

(42) Defendant Gavlick always made sure that her son's medical treatments were being covered under her husband Blase's insurance.

(43) Defendant Gavlick has provided no documentary evidence to support her claim that she stole the funds to pay for her son's extraordinary medical expenses over several years.

(44) Defendant Gavlick's conduct was willful and wanton.

(45) Through the settlement with Gavlick & Rowe P.C., its insurance carrier, Westport Insurance Company, and with the proceeds received through the Pennsylvania Client Security Fund, all plaintiffs, except George Fulton, Candice E. Steffey and Geri D. Moody, have been made whole for the losses sustained by the criminal conduct of Jean Gilroy Gavlick and/or the negligent conduct of Gavlick & Rowe P.C.

(46) Defendant Gavlick continues to refuse to take full responsibility for her actions and instead has offered excuses and blames others; even to the point of stating Cheryl Rowe of Gavlick & Rowe P.C. "was quite an expert at handling a gun" and stating "[Ms. Rowe] made a point of telling me that she knew where my children were on most days." (Plaintiffs' exhibit 2 at pp. 58-62.)

(47) Defendant Gavlick's conduct is outrageous.

(48) Defendant Gavlick claims to have a negative net worth. (Plaintiffs' exhibit 2 at p. 81.)

(49) In late August, 2002, several Citizens Bank Certificates of Deposit, jointly owned by defendant Gavlick and her mother, Hazel Gilroy, in the aggregate amount of approximately $69,000, were redeemed early.

(50) Defendant was present with her mother when the CDs were cashed in.

(51) Defendant Gavlick has not complied with discovery requests and orders and has attempted to deceive the court concerning the use of the stolen proceeds, how the fruits of her crimes were dissipated and/or whether or not they have been retained by herself, her family or her friends.

(52) Defendant Gavlick has yet to disclose what she actually did with all of the plaintiffs' monies.

## III. DISCUSSION

The main issue before this court is what measure of punishment, by means of punitive damages, should it impose upon Jean Gilroy Gavlick for her willful, wanton and outrageous conduct. Liability for the harm caused by the defendant's fraud upon her victims has clearly been established by her guilty pleas to eight counts of theft. The only issues remaining in that regard are the amounts of compensatory damages that should be awarded to plaintiffs Fulton, Steffey and Moody. Plaintiff Fulton requests that, due to the defendant's discovery violations, we enter a default judgment against the defendant for the full amount of the monies initially taken. This we decline to do, as plaintiff Fulton concedes that $93,500 was returned to him. (Plaintiffs' proposed finding of fact no. 39). We find the compensatory damages based upon the actual harm suffered to be a mathematical calculation, the amount of monies stolen, minus the amounts that were returned to the plaintiffs by defendant Gavlick. The amount taken from plaintiff Fulton was $197,789.28. (Plaintiffs' exhibit 1, p. 9.) The amount

returned to him was $93,500. Therefore, we find plaintiff Fulton is entitled to compensatory damages in the amount of $104,289.28. Likewise, the amount of monies taken from plaintiffs Steffey and Moody was $77,740.03. (*Id.* at p. 13.) We find no support in the record that any of this money was returned to them, thus, we find they are entitled to the full amount as compensatory damages. We also find that the plaintiffs are entitled to statutory interest on these amounts. Defendant argues that the plaintiffs have been made whole and they should not recover. We reject this argument because of the subrogation liens that Westport Insurance Company and the Pennsylvania Client Security Fund would have for amounts they paid out to the plaintiffs. Defendant also argues that plaintiffs gave up their right to pursue additional damages against her by signing the settlement of November 7, 2002, with Gavlick & Rowe P.C. The settlements that we approved specifically stated that they were not settlements of any possible claims of any nature that could be brought against Jean Gilroy Gavlick and such remained open and subject to further order of this court.

We turn our attention to the issue of punitive damages and the standards we must apply to be able to impose them in this case. The Supreme Court of Pennsylvania has adopted the guideline of section 908(2) of the Restatement (Second) of Torts regarding the imposition of punitive damages. *Feld v. Merriam,* 506 Pa. 383, 395, 485 A.2d 742, 747 (1984). Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. See *Chambers v. Montgomery,* 411 Pa. 339, 192 A.2d 355 (1963). "Punitive damages must

be based on conduct which is malicious, wanton, reckless, willful, or oppressive . . . ." *Shiner v. Moriarty,* 706 A.2d 1228, 1239 (Pa. Super. 1998). Further, one must look to "the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties . . . ." *Feld* at 395, 485 A.2d at 748. (citation omitted) "The state of mind of the actor is vital. The act . . . must be intentional, reckless or malicious." *Id.* at 396, 485 A.2d at 748.

"[P]unitive damages are [not only] awarded to punish a defendant for certain outrageous acts, [but also] to deter him *or others* from engaging in similar conduct." *G.J.D. by G.J.D. v. Johnson,* 552 Pa. 169, 176, 713 A.2d 1127, 1131 (1998). (citation omitted) (emphasis in original) The standard under which punitive damages are measured in Pennsylvania requires analysis of the following factors: (1) the character of the act, (2) the nature and extent of his victim's harm, and (3) the wealth of the defendant. *Kirkbride v. Lisbon Contractors Inc.,* 521 Pa. 97, 102, 555 A.2d 800, 803 (1989) (citing Restatement (Second) of Torts §908(2)); accord *Tunis Brothers Co. Inc. v. Ford Motor Company,* 952 F.2d 715, 740-41 (3d Cir. 1991), *cert. denied,* 505 U.S. 1221, 112 S.Ct. 3034, 120 L.Ed.2d 903 (1992) (applying Pennsylvania law). It is for the fact-finder to weigh these factors in arriving at an appropriate punitive damage award. *Kirkbride* at 102, 555 A.2d at 802.

The Pennsylvania Supreme Court has held that the award need not bear a proportional relationship to the *amount* of compensatory damages awarded. See *Kirkbride* at 103-104, 555 A.2d at 803. "Under Pennsylvania law, a reasonable relationship must still exist be-

tween the nature of the cause of action underlying the compensatory award and the decision to grant punitive damages." *Judge Technical Services Inc. v. Clancy,* 813 A.2d 879, 888 (Pa. Super. 2002). (citation omitted) "The degree of reprehensibility is the primary indicator of the reasonableness of a punitive damages award. *Id.* The reprehensibility inquiry takes into consideration the fact that some wrongs are more blameworthy than others." *Id.* at 888. (citation omitted)

However, we are mindful that recent cases from the United States Supreme Court have held that excessive punitive damages awards violate due process. Judicial review of the size of punitive damage awards provides a safeguard against excessive verdicts. *Honda Motor Co. Ltd. v. Oberg,* 512 U.S. 415, 114 S.Ct. 2331, 2335, 129 L.Ed.2d 336, 343 (1994). In *Honda,* the Supreme Court explicitly declined to adopt or identify any particular standard of review which provides the level of scrutiny demanded by the Fourteenth Amendment. *Id.,* 512 U.S. 415, 114 S.Ct. at 2341 n.10, 129 L.Ed.2d at 350 n.10. But the Supreme Court indicated in that case that the award cannot be the result of "passion and prejudice," the awards should not be "grossly excessive," or "against the weight of the evidence." In *BMW of North America Inc. v. Gore,* 517 U.S. 559, 134 L.Ed.2d 809, 116 S.Ct. 1589 (1996), the United States Supreme Court stated, "Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a state may impose." *Id.* at 826. Where the ratio of punitive damages to compensatory damages is not within a constitutionally

acceptable range, it must surely "raise a suspicious judicial eyebrow." *Id.* at 831. What a constitutionally acceptable range is has not yet been dictated to the lower courts by the high court. Very recently, in *State Farm Mutual Automobile Insurance Company v. Campbell,* 538 U.S., 155 L.Ed.2d 585, 123 S.Ct. 1513 (2003), the U.S. Supreme Court again declined to impose a bright-line ratio which a punitive damages award cannot exceed. *Id.* at 1524. Nevertheless, it stated, "Our jurisprudence and the principles it has now established demonstrate . . . that in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *Id.*

With these principles in mind, we turn to the evidence before us:

"I have respect for my mother and I know that is *her* money." So said the defendant during the non-jury trial on March 28, 2003, when asked why the certificates of deposit in her and her mother's name were not used to pay restitution to the victims in this case. The court asked itself, "What about all the money that was *heir* money, that she treated as *her* money? Where was the respect?" What defendant Gavlick gave the heirs was reckless indifference at a time when they were suffering both human and financial losses. Shortly after the loss of their loved ones, plaintiffs came to Attorney Jean Gilroy Gavlick for help. They entrusted their affairs to her. She betrayed that trust, not just once, but over and over again. This conduct persisted for years. Gavlick even stole money from one estate to repay another in an attempt to keep from getting caught. She had clients send her money under false pretenses. She told her clients that she was

filing tax returns for the estates when she did not. Even after her scheme began unraveling, she called trusting clients to attempt to get more money to cover her tracks.

Because Gavlick was an attorney that these clients hired when they were most vulnerable, we find that these wrongs are more blameworthy than others. As we commented during the guilty plea proceedings on October 18, 2002, the word "estate" is a term of art for actions occurring in an orphans' court proceeding that involve probate of the estate either in accordance with the direction of the person who prepared the will or according to the laws of inheritance. A will is a simple document where we say to our loved ones, our friends, or charities, "while my body and soul are leaving you, I am remembering you by leaving you my money, my home, my car, my personal remembrances." It is an emotional process undergone by decedents to decide who is to get what and what to pass on, to which loved ones. The decedent is saying, "I am giving you my right, my title, my interest in all that I have left to give." But to facilitate this, most people need a lawyer. They come to an honorable and trusted profession. The defendant responded to the call with trickery and deceit. She was indifferent to her clients' grief. She was not entitled to take from the lifelong efforts of persons who had nothing other than memories and their personal possessions to give to those who survived them. And the fact that Gavlick repeated this conduct over and over, with more than just one client, makes her conduct that much more reprehensible. Gavlick's motive was to maintain her lifestyle when she (supposedly) faced economic shortfalls because of her husband's and son's medical problems. Her self-interest superseded

her clients' and instead of handling the financial problems as any responsible adult would do, whether it was to declare bankruptcy or to take out loans, the defendant, with reckless indifference to the rights of her clients, intentionally stole their money to keep herself from facing any losses. Whether it was for medical prescriptions, or for fur coats, jewelry, or expensive artwork is irrelevant. There is no justification for what she did.

We find that Gavlick's actions were reprehensible. Plus, the nature and extent of the harm to the plaintiffs is obvious. After the death of their loved ones, they endured years of deceptions and lies, causing them additional emotional pain and financial losses, not to mention substantial legal fees incurred in trying to get the estates settled and their property, that their deceased loved ones intended for them to have, returned.

The court has not been able to determine the net worth of the defendant. However, in determining punitive damages, evidence of net worth is not mandatory. *Shiner, supra,* at 1240. We note that, during the course of the discovery and the non-jury trial, what became apparent is that the defendant still fails to take full responsibility for her outrageous conduct. She is still refusing to acknowledge the gravity of her conduct and the enormity of her offenses. With every retelling of her tale of woe, defendant, again and again, tries to deceive. She has failed to persuade this court.

Therefore, we find an award of punitive damages is appropriate to punish the defendant and to deter others from abusing positions of trust by stealing from their clients. We are guided by the recent decisions of the U.S. Supreme Court and therefore, we find an award of

$104,289.28 in punitive damages payable to plaintiff Fulton to be appropriate, and not excessive. We also find an award of $77,740.03 in punitive damages payable to plaintiffs Steffey and Moody to be appropriate.

We also find that prejudgment interest is appropriate in this case because the damages are liquidated amounts and the fault in nonpayment of the claims rests with the fiduciary defendant, who had the benefit of plaintiffs' money and who failed to return the money, even after she had so agreed. See generally, *Marrazzo v. Scranton Nehi Bottling Company Inc.,* 438 Pa. 72, 263 A.2d 336 (1970); *Sack v. Feinman,* 489 Pa. 152, 413 A.2d 1059, 1063-66 (1980).

As plaintiffs have proceeded on their tort claims, we will dismiss their remaining claims as moot.

## IV. CONCLUSIONS OF LAW

(1) Defendant, Jean Gilroy Gavlick, has admitted through her guilty plea entered in this case that she misappropriated $197,789.28 from plaintiff George Fulton.

(2) Defendant, Jean Gilroy Gavlick, has admitted through her guilty plea entered in this case that she misappropriated $77,740.03 from plaintiffs Steffey and Moody.

(3) The defendant's conduct was the legal cause of the harm suffered by the plaintiffs, and they are entitled to their actual damages for the fraud.

(4) Plaintiff Fulton has received total restitution from defendant Gavlick in the amount of $93,500.

(5) Plaintiffs Steffey and Moody have received no restitution from defendant Gavlick.

(6) Prejudgment interest can be awarded to the plaintiffs because the damages are liquidated amounts and the fault in nonpayment of plaintiffs' claims rests with the defendant.

(7) Plaintiff Fulton is entitled to statutory interest for the sum of $197,789.28 from February 1, 2001 until September 13, 2001, when plaintiff received restitution in the amount of $85,000. Plaintiff Fulton is also entitled to interest on the unpaid balance at 6 percent annum, from September 13, 2001 until November 7, 2002.

(8) Plaintiffs Steffey and Moody are entitled to statutory interest for the sum of $77,740.03 from January 1, 2001 until November 7, 2002.

(9) Liens on behalf of Westport Insurance Company and the Pennsylvania Client Security Fund in the amounts paid to plaintiffs are recognized and preserved.

(10) The conduct of the defendant was outrageous and reprehensible.

(11) The nature and the extent of the harm suffered by the plaintiffs was substantial.

(12) The imposition of punitive damages against the defendant to punish her and to deter others is appropriate.

(13) Punitive damages in the amount of $104,289.28 are reasonable and are due to plaintiff Fulton.

(14) Punitive damages in the amount of $77,740.03 are reasonable and are due to plaintiffs Steffey and Moody.

(15) All other terms of the court's order of January 16, 2002 (plaintiffs' exhibit 3), shall remain in full force and effect.

Accordingly, we enter the following verdict:

## VERDICT

And now, June 17, 2003, it is hereby ordered that a verdict is entered in favor of plaintiff George Fulton, individually and as executor of the estate of Jacqueline M. Fulton, deceased, and against defendant, Jean Gilroy Gavlick, for fraud, in the amount of $104,289.28, plus statutory interest on the sum of $197,789.28 from February 1, 2001 until September 13, 2001, when plaintiff received restitution in the amount of $85,000. It is further ordered that interest on the unpaid balance at 6 percent annum, from September 13, 2001 until November 7, 2002, shall also be due and payable to plaintiff Fulton. It is further ordered that punitive damages in the amount of $104,289.28 are awarded in favor of the plaintiff, George Fulton, and against the defendant, Jean Gilroy Gavlick, to punish defendant Gavlick for her outrageous conduct in the handling of the estate of Jacqueline M. Fulton.

It is further ordered that the remaining counts in plaintiff Fultons' amended complaint are dismissed as moot.

It is further ordered that a verdict is entered in favor of plaintiffs Candice E. Steffey and Geri D. Moody, individually and as executors of the estate of Doris M. Killian, deceased, and against defendant, Jean Gilroy Gavlick, for fraud, in the amount of $77,740.03. It is further ordered that statutory interest for the sum of $77,740.03, from January 1, 2001 until November 7, 2002, shall also be due and payable to plaintiffs Steffey and Moody. It is further ordered that punitive damages in the amount of $77,740.03 are awarded in favor of plaintiffs, Candice

E. Steffey and Geri D. Moody, and against the defendant, Jean Gilroy Gavlick, to punish defendant Gavlick for her outrageous conduct in the handling of the estate of Doris M. Killian.

It is further ordered that the remaining counts in plaintiffs Steffey and Moodys' complaint are dismissed as moot.

It is further ordered that all other terms of the court's order of January 16, 2002 shall remain in full force and effect.